(November 28, 1914.)

ALFRED BUDGE, Plaintiff, v. W. L. GIFFORD, as Secretary of State, Defendant.

[144 Pac. 333.]

MANDAMUS—JUSTICE OF SUPREME COURT—VACANCY IN OFFICE—BALLOTS —ELECTION TO FILL VACANCY—APPOINTMENT TO FILL—DUTY OF GOVERNOR—CONSTITUTIONAL CONSTRUCTION.

1. · An election to fill a vacancy in the office of justice of the supreme court is not authorized under the constitution of this state, and no attempt at a special election to fill such vacancy by writing in the name of the office to be filled and the person to be voted for would be legal and valid.

2. Under the provisions of sec. 6, art. 4 of the state constitution, when a vacancy occurs in the office of justice of the supreme court, it becomes the duty of the governor to fill the same by appointment, and such appointee shall hold such office until the end of the term for which the original incumbent was elected.

3. Certain provisions of the constitution cited and commented on.

4. All provisions of the state constitution relating to a given subject must be construed together, and where certain provisions are definite and explicit, they must be given precedence over expressions which are merely of a general character.

5. *Held*, under the facts of this case the peremptory writ must issue.

Original application for writ of mandate to compel the Secretary of State to issue a commission for the appointment of Honorable Alfred Budge to fill the full term of vacancy caused by the death of Justice Stewart. Writ *granted*.

Cavanah, Blake & MacLane, Martin & Martin and Budge & Barnard, for Plaintiff.

Where a term of office is fixed by the constitution, the legislature has no power to change the length of the term. (29 Cyc. 1397; *State v. Thoman*, 10 Kan. 191; *Commonwealth v. Sheatz*, 228 Pa. St. 301, 77 Atl. 547, 21 Ann. Cas. 54, 50 L. R. A., N. S., 374.)

If a judge now takes his seat as successor to Justice Stewart the office is in no sense vacant either under sec. 317 Rev.

Codes or under the commonly accepted meaning of the term, at the general election of 1916; and if a successor may then be elected, it is because Judge Budge's term ends, and not because there is a vacancy in the term either of Justice Stewart or of Judge Budge. (*Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060; *State v. Howe,* 25 Ohio St. 588, 595, 18 Am. Rep. 321; *Collins v. State,* 8 Ind. 344; 8 Words & Ph. 7259; *State v. Howell,* 59 Wash. 492, 110 Pac. 386, 50 L. R. A., N. S., 336.)

The provision of sec. 320, that a vacancy in the supreme court "shall be filled by appointment by the governor until the next general election, etc., refers to the next general election at which the particular term of office in the supreme court is to be filled. (*People v. Mathewson,* 47 Cal. 442; *People v. Budd,* 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46, *People v. Col,* 132 Cal. 334, 64 Pac. 447; *State v. Smith,* 35 Mont. 523, 90 Pac. 750, 10 Ann. Cas. 1138; *State v. Collins,* 2 Nev. 351; *State v. Cobb,* 2 Kan. 32; *Matthews v. Board of Commissioners,* 34 Kan. 606, 9 Pac. 765; *Wainwright v. Fore,* 22 Okl. 387, 97 Pac. 831; *People v. Hardy,* 8 Utah, 68, 29 Pac. 1118; *State v. Gardner,* 3 S. D. 553, 54 N. W. 606; *People v. Wilson,* 72 N. C. 157; *State v. Philips,* 30 Fla. 590, 11 So. 922; *Ransdell v. Ariail,* 13 La. Ann. 459; *Smith v. Halfacre,* 6 How. (Miss.) 582.)

It is to be observed, as held in *Kenfield v. Irwin,* 52 Cal. 164, cited and followed in *State v. Howell, supra,* that an election to fill a vacancy, though held at the same time as a general election, is a special election. The only elections to fill vacancies which the statute provides for are for vacancies in the office of members of the legislature and of members of Congress. (Secs. 325, 326.) By sec. 331, an appointee as well as one elected to fill a vacancy possesses "all the rights and power" of the officer whose vacancy he fills. (*Sheen v. Hughes,* 4 Ariz. 337, 40 Pac. 679.)

J. H. Peterson, Atty. Genl., J. J. Guheen, T. C. Coffin and E. G. Davis, Assistants, for Defendant.

No valid election could be held in this state under the circumstances of writing in a few names on the ballot such as

was done at the last general election in an attempt to thereby elect a member of this court. (*People v. Porter*, 6 Cal. 26; *People v. Kerwin*, 10 Colo. App. 472, 51 Pac. 531; *Beal v. Morton*, 18 Ind. 346; *Wood v. Barthing*, 16 Kan. 109; *Cook v. Mock*, 40 Kan. 472, 20 Pac. 259; *Wilson v. Brown*, 109 Ky. 229, 139 Ky. 397, 58 S. W. 595; *Commonwealth v. Smith*, 132 Mass. 289; *Secord v. Foutch*, 44 Mich. 89, 6 N. W. 110; *Adsit v. Board of Canvassers*, 84 Mich. 420, 48 N. W. 31, 11 L. R. A. 534; *State ex rel. Bates v. Thayer*, 31 Neb. 82, 47 N. W. 704; *State ex rel. Bolton v. Good*, 41 N. J. 296; *People ex rel. Davies v. Cowles*, 13 N. Y. 350; *People ex rel. McKune v. Weller*, 11 Cal. 49, 70 Am. Dec. 754; *Foster v. Scarff*, 15 Ohio St. 532; *In re Contested Election of Lawlor*, 180 Pa. St. 566, 37 Atl. 92; *State ex rel. Sampson v. Superior Court*, 71 Wash. 484, Ann. Cas. 1914C, 591, 128 Pac. 1054; *State ex rel. Peacock v. Orvis*, 20 Wis. 235; *State ex rel. Chase v. McKinney*, 25 Wis. 416.)

*People v. Budd*, 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46, is a case upon which considerable reliance seems to be placed by the plaintiff in this action. A careful reading of that case will show, however, that instead of being a case in favor of his contention, it is one against it. (See, also, *People v. Babcock*, 123 Cal. 307, 55 Pac. 1017; *People, etc. v. Col*, 132 Cal. 334, 64 Pac. 477.)

In the case of *Rice v. Stevens*, 25 Kan. 302, the court lays down the proposition that "the theory of our law is that officers shall be elected whenever it can be conveniently done, and that appointments to office will be tolerated only in exceptional cases."

In *State v. Mechem*, 31 Kan. 435, 2 Pac. 816, the court construes certain sections of the compiled laws of that state, and sets out at length, two sections of such laws, one of which is identical with sec. 320 of our code, and the other is practically word for word with sec. 329. These compiled laws of Kansas were enacted in 1879, and it is a reasonable assumption that sec. 329, which appears to have been first enacted in 1899, was copied bodily from the compiled laws of Kansas of 1879. In the latter case, construing the section of the

Kansas compiled laws which is practically identical with sec. 329, the Kansas court said: ''By this last section it was the evident intention of the legislature to provide that where officers are elected to fill vacancies, they are to hold during the unexpired term of the former incumbent; but if appointed they are not to hold for the unexpired term, but only until their successors are elected and qualified.''

No matter what may be read into the other sections of our code, nothing can be read into sec. 329 without doing violence to every principle of statutory construction. (*Matthews v. Board of Commissioners*, 34 Kan. 606, 91 Pac. 765; *State v. Cobb*, 2 Kan. 32; *McIntyre v. Iliff*, 64 Kan. 747, 68 Pac. 633.) See, also, *State v. Johns*, 3 Or. 533, in which is discussed, not only the tenure of appointed officers, but the theory under which appointments of this nature are permitted, and *Joy v. Gifford*, 22 Ida. 301, 125 Pac. 181.

In no case which we have been able to examine is there a single indication that if the court had been construing language similar to that contained in our statutes it would have held that vacancies filled by appointment could continue beyond the next general election at which the vacancy could be filled according to the provisions of the law.

SULLIVAN, C. J.—This is an original proceeding in this court for a writ of mandate to compel the Secretary of State to issue to the plaintiff, Alfred Budge, a commission as justice of the supreme court, under an appointment made by the governor to fill the vacancy occasioned by the death of Justice Stewart, whose term of office will not expire until the first Monday in January, 1919.

The defendant appeared at the time of filing the complaint and waived the issuance of the alternative writ and thereafter made return as if such writ had been issued. The plaintiff demurred to the return and also interposed a motion to quash and upon the issues thus made the cause was presented to the court.

The facts set forth in the petition and return are undisputed and leave nothing for decision but questions of law.

It appears from the record that the governor on the 17th of November, 1914, appointed Honorable Alfred Budge to fill the vacancy caused by the death of Justice Stewart, and recited in the letter of appointment that the appointment would continue for the remaining part of the unexpired term for which Justice Stewart was elected, or until the first Monday in January, 1919, and until a successor was duly elected and qualified, and on the same date the Secretary of State declined to issue a commission to the plaintiff, for two reasons, namely: (1) That the secretary was advised that such appointment could only continue until the next general election to be held in the year 1916, and until a successor to such appointee is elected and qualified; and, (2) because at the general election held November 3, 1914, ballots were cast upon which were written or attached with stickers names of persons for the office of justice of the supreme court to succeed the late Justice Stewart, and for the reason that he is advised that the person receiving the highest number of votes thus cast for that position is entitled to a certificate of election, and for those reasons there is no vacancy to be filled by appointment.

Thus it will be observed that two questions are presented for determination: (1) Was there a vacancy in the supreme court at the time of the appointment of Alfred Budge which the governor could fill by appointment, or was such vacancy filled at the general election by casting ballots in the forms hereinafter stated: (2) If there was a vacancy, does the appointment so made run for the balance of the unexpired term of Justice Stewart, which may be called for convenience a four-year term, or simply until the next general election and the qualification of a successor thereunder, which may be called a two year term?

The facts are substantially as follows: At the general election held in 1912, Honorable George H. Stewart was elected as one of the three justices of the supreme court of this state for a term of six years commencing on the first Monday of January, 1913, and ending on the first Monday of January, 1919. On the 25th of September, 1914, thirty-eight days

before the election held on November 3d of this year, Justice Stewart died and a vacancy in his office was thereby created. The primary election for nominations for state officers occurred on the first day of September, 1914, twenty-five days before the death of Justice Stewart. No nominations were made to fill the vacancy thus created and no names of candidates to fill this vacancy were printed upon the official ballots, nor was there any space designated or left upon the ballots for electors to write in names to fill said vacancy, and the election proceeded upon the presumption, so far as the state and election officials and the general public were concerned, that but one justice of the supreme court, to wit, a successor to Justice. Truitt holding the term of Justice Ailshie, resigned, which expires on the first Monday in January, 1915, was to be elected at said election.

Notwithstanding these facts, in four counties of the state there were 232 votes cast for W. H. Holden to fill said vacancy; in two counties there were 129 votes cast for T. H. Bartlett to fill said vacancy; in one county 97 votes were cast for C. L. McDonald to fill said vacancy, and in two counties there were 67 votes cast for Carl Davis to fill said vacancy, making the total number of votes cast to fill said vacancy 525. All of said votes were cast in four counties, thus leaving twenty-nine counties in which no votes were cast to fill said vacancy. The total number of votes cast at such election, as shown by the votes cast for governor was 107,913, and the total number of votes cast for the two candidates for justice of the supreme court to succeed Judge Ailshie was 47,162; the total number of votes cast for all of said candidates to fill said vacancy occasioned by the death of Justice Stewart was 525, and the highest number cast for any one of them was 232. This clearly shows that said election, so far as filling said vacancy was concerned, was not a full and free expression of the public will to fill said vacancy at said election.

In voting for some of said candidates the electors used stickers upon which were printed the words, "For Justice of the Supreme Court to fill the vacancy of former Justice George

H. Stewart," and wrote or had printed under such stickers the name of the person for whom they desired to vote. Other electors wrote substantially the same words upon the ballots and below the words wrote in the name of the person for whom they desired to vote.

The first question presented is as to whether there was a vacancy in the supreme court at the time the governor made the appointment above referred to, or was such vacancy filled by the votes cast as above indicated?

It is sufficient to say that we have no statute for filling vacancies as was attempted to be done in this case. Under the provisions of sec. 353 the governor is required to issue an election proclamation, which proclamation must contain a statement of the time of election and the offices to be filled. The governor issued such proclamation and mentioned all state officers therein to be filled, but did not notify the electors that the vacancy occasioned by the death of Justice Stewart was to be filled at that election, and, in fact, it could not have been done had the proclamation been issued at least forty days before the election, as required by statute, since the death of Justice Stewart occurred only thirty-eight days before the election. Therefore, the electors were not notified in any manner that said vacancy was to be filled at said election; no candidate was nominated in any way at said election to fill said vacancy and no person publicly announced himself or advertised himself as a candidate to be voted for at said election to fill said vacancy, through the press of the state or otherwise. The said votes procured to be cast for the four persons above stated were procured quietly by said candidates or their friends and in such a manner as not to give notice to the public generally. The official ballot used at said election did not contain any mention of said office and contained no space wherein the name of a candidate to fill such vacancy might legally be written. It clearly appears that the electors of the state generally had no notice or knowledge that such vacancy was to be filled, since only 525 votes were cast out of 107,913 cast for governor at said election.

While it thus appears that the notice required by the statutes of this state, as a preliminary requisite to the holding of a valid and legal election, was not given, and while we should not hesitate to hold, in any case in which the question might be squarely presented, that no special election to fill a vacancy could legally be had under such circumstances as those presented in this case where a few scattered voters write upon their ballots both the name of the vacancy to be filled and the person to be voted for, yet under the view we have taken of the constitutional power of the governor to fill vacancies occurring in the office of justice of the supreme court, that particular question does not arise in this case and need not be definitely passed upon at this time. Under our views upon the appointive power of the governor in cases of this character, no election to fill this particular vacancy could have legally been held in any event.

The other question presented is: Does the appointment of Honorable Alfred Budge, made by the governor on the 17th of November, 1914, run or continue for the balance of the unexpired term of Justice Stewart? In deciding this question, certain provisions of our state constitution must be referred to.

Art. 5 of the constitution treats of the judicial department of the state. Sec. 2 of that article is as follows: "The judicial power of the state shall be vested in a court for the trial of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace and such other courts, inferior to the supreme court, as may be established by law, for any incorporated city or town."

Section 6 provides that the supreme court shall consist of three justices, a majority of whom shall be necessary to make a quorum or pronounce a decision. The term of office of such justices is fixed at six years, except the first three elected who were to draw for terms. Sec. 11 provides for the creation of the office of district judge. Sec. 14 provides for the establishment of municipal courts. Sec. 21 relates to the jurisdiction of probate courts. Sec. 22 provides for the election of justices of the peace. Said article, then, may be said to

provide for the following courts and judges: State senate as a court of impeachment; justices of the supreme court; district judges; probate judges; justices of peace and municipal judges.

Under the provisions of sec. 19 of said art. 5, it is provided that vacancies in any of said offices must be filled as provided by law and if that were the only provision of the constitution with reference to vacancies, the contention of the defendant as to the plenary power of the legislature in filling such vacancies would be correct. But in determining this question we must take into consideration a part of sec. 6 of art. 4 of the constitution which relates to the filling of vacancies, and is as follows:

"If the office of a justice of the supreme court or district court, Secretary of State, state auditor, state treasurer, attorney general, or superintendent of public instruction, shall be vacated by death, resignation or otherwise, it shall be the duty of the governor to fill the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law."

Under that provision of the constitution, whenever a vacancy occurs in the office of the justice of the supreme court, it becomes the duty of the governor to fill the same by appointment. This is an absolute grant of appointive power to the governor by the constitution itself and does not depend upon legislative action or legislative sanction. That power given the governor is not limited or controlled in any manner by the provisions of said section 19 of art. 5. If that were so, the legislature might provide that when a vacancy occurs in the office of a justice of the supreme court, or any other office named in said section 6, such vacancy should be filled by special election or by the legislature or in any other manner than by appointment by the governor, and thus deprive him of that power, the exercise of which is not merely permitted but is made mandatory by the provisions of said section. The language there used with reference to the vacancy is that

the governor "shall fill the same by appointment" and with reference to the appointee, that he "shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law."

After the vacancy has once been filled, there is no vacancy to be filled. The vacancy caused by the death of Justice Stewart extended from September 25, 1914, the date of his death, until the first Monday in January, 1919, or until a successor should be duly elected and qualified, a little over four years, and the governor is authorized to fill that vacancy, and at the end of the term to which the deceased incumbent was elected the successor of such appointee shall be elected and qualified in such manner as may be provided by law. Since the governor is empowered to fill such vacancy—not a part of it—the appointee holds the office until the term of vacancy expires, or until his successor is elected and qualified as provided by law. The words "his office" and "his successor" clearly indicate that the appointee succeeds to all the rights in the office held by the original incumbent and that he shall continue to hold and exercise them until the time arrives for the election of his successor in the manner provided by law, for the next suceeding term of the office in question.

In view of these considerations, it must be held that said sec. 19 has no application whatever to a vacancy in the office of the supreme or district courts, but that it relates wholly to vacancies in other offices provided for by art. 5, the filling of which is not otherwise provided for by the constitution.

It is a well-recognized rule of construction that all provisions of a statute or constitution relating to a given subject must be construed together. It is also a well-recognized rule of construction that expressions which are perfectly definite and explicit in their character must be given precedence in any case over those expressions which are of a general character only; and construing said section 19 with said section 6 of article 4, the indefinite provisions of the former must be governed and controlled by the specific and definite provisions of the latter. In the light of these well recognized rules of

construction, said sec. 19 must be understood and interpreted as though it read as follows: All vacancies occurring in the offices provided for in this article of the constitution shall be filled as provided by law "unless otherwise provided for in this constitution." The appointment to fill a vacancy in the office of supreme justice being otherwise provided for in the constitution, and such appointment being vested solely in the governor, it must be held that sec. 19 has no application whatever to such vacancy and that the legislature is given no power whatever by the constitution to deprive the governor of the right of such appointment. The absolute grant of that right to the governor is prohibitive on the legislature to attempt to limit or restrict the full exercise thereof.

Having reached that conclusion, it follows that the provisions of secs. 320 and 329 of the Revised Codes, in so far as those sections attempt to provide a manner of filling a vacancy in the office of the justice of the supreme court to hold only until the next general election, are necessarily repugnant to the constitution and in derogation of the specific power of appointment to fill vacancies in that office granted by the constitution to the governor, unless the term "next general election" be construed to mean until the next general election to fill the particular office in question.

Many authorities have been cited where it has been held that the terms "general election" and "regular election" mean the next general or regular election for the filling of the office referred to, and the provisions of sec. 324, Rev. Codes, with reference to the filling of vacancies occurring thirty days prior to the general election, in so far at least as the issues of this particular case are concerned, may be held to apply only to elections at the end of the term when the particular office would ordinarily be filled. However, under our view of the constitutional provisions cited, and having held that the governor is authorized thereby to fill such vacancies for the entire unexpired term of the office vacated, it is not necessary to further pass upon or construe the sections of the statute above referred to.

The peremptory writ must therefore issue requiring the Secretary of State to issue a commission to the Honorable Alfred Budge, as prayed for in his petition, for the full term of the vacancy occasioned by the death of Justice Stewart.

Truitt, J., concurs.