# THE STATE ex rel. I. N. EVARD v. CORNELIUS ·ROACH, Secretary of State.

In Banc, December 30, 1916.

1. **STATE SUPERINTENDENT OF SCHOOLS: Vacancy in Office.** If a vacancy occurs in the office of State Superintendent of Public Schools it is to be filled by appointment by the Governor, and such appointee holds for the residue of the term. Even though such vacancy occurs in the year in which a Presidential election is held and prior thereto, there is neither constitutional nor statutory authority for filling it by election for the remainder of the term at such Presidential election.

2. ————: **Constitutional Office: Vacancy: Meaning of Next General Election.** The office of State Superintendent of Public Schools is a constitutional office, created by the Constitution, its term fixed thereby, and the times at which elections are to be held to fill the office are likewise fixed by it. The Constitution in creating seven executive offices, in section 2 of article 5, and declaring that their terms shall be four years "from the second Monday in January after their election," that six of them should be elected at Presidential elections and that "the Superintendent of Public Schools shall be elected at the general election in the year 1878, and every four years thereafter," and in declaring in section 11 of article 5 that "when any office shall become vacant, the Governor, unless otherwise provided by law, shall appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed and qualified according to law," meant that, as to constitutional offices, the appointment to fill a vacancy was to be 'for the residue of the term; and the statute (Sec. 10918, R. S. 1909) in declaring that in case of a vacancy in the office of Superintendent of Public Schools "the Governor shall fill the same by appointment, who shall hold his office until the next general election," must be harmonized with these constitutional provisions, and when this is done the words "next general election" used in the statutes mean the next general election for the election of Superintendent of Public Schools. This view is emphasized by the legislative interpretation of said constitutional provisions· (Secs. 11803 and 11805, R. S. 1909) and by constitutional interpretation as well (Sec. 16, art. 5).

3. ————: **Vacancy After Primary Election.** *Held*, by GRAVES, C. J., with whom BOND, J., concurs, that where a vacancy occurs after a primary election ·in an office to be filled at the next succeeding general election, or within sixty days prior to such primary, section 5870, Revised Statutes 1909, authorizing a

party committee to fill "vacancies occurring after the holding of a primary," does not apply; but when all the statutes governing general and primary elections are read together, as they should be, notwithstanding the primary election laws are later enactments, it is clear that section 5870 was meant to apply only to an office for which there could have legally been a candidate at such primary.

## Mandamus.

WRIT DENIED.

*Spencer & Donnell* for relator.

*John T. Barker,* Attorney-General, for respondent.

GRAVES, C. J.—The facts of this case are few and simple. In November, 1914, at the general state election for that year, Howard A. Gass was duly elected Superintendent of Public Schools for the State of Missouri, for the term of four years. On September 18, 1916, Prof. Gass died. On September 27, 1916, the Republican State Committee selected and nominated (as it is alleged) the relator, I. N. Evrard, as the candidate of the Republican party for that office, which office such committee thought was vacant and to be filled by election at the general state election November 7, 1916. On October 14, 1916, the relator, I. N. Evrard, presented his certificate of nomination by such party committee to respondent, the Secretary of State, and said respondent refused to file the same, for the reason that (as he deemed it) there was no vacancy in said office to be filled at the said election of November 7, 1916.

Upon such refusal the relator applied for our writ of mandamus to compel the respondent to place his name upon the Republican ticket as a candidate for such office at the general election on November 7, 1916. Formal issuance of our alternative writ was waived and the petition taken as and for such writ. To this petition respondent filed return, and thereupon relator moved (by written motion) for judgment upon the pleadings. The questions were purely questions of law and this court

after due consideration of the same overruled the motion for judgment filed by relator and refused the peremptory writ of mandamus in a judgment duly entered, and assigned the cause for an opinion later in accordance with such judgment. To me has fallen the lot of writing the opinion.

I.   I was, and am now, of the opinion that our judgment denying to relator our writ of mandamus can be sustained upon two grounds.  I know that a majority of my brothers took a contrary view as to one ground in the case of State ex rel. Hagerman v. Drabelle, 191 S. W. 691.  I, with one other, dissented in that case, and the assignment in this case gives me opportunity to express the views that I entertained in the Hagerman case, supra, although they be only the views of myself and my brother BOND, in this case.  We need not discuss them at length, because the majority has ruled against them, and we have no idea of changing that ruling.

**Nominations by Party Committee.**

As in the Hagerman case we are of the opinion that there was no vacancy in the office of Superintendent of Public Schools to be filled at the election of November 7, 1916, because Professor Gass died at a time when no legal nomination could be made for that office.  The primary laws of the State require all candidates for public office (such as here involved, and such as was involved in the Hagerman case, supra) to be nominated at a general primary election.  Under the law this primary for 1916 was on August 1st.  To get on the primary ballot the aspirants had to file their declarations sixty days prior to that date.  The State has assumed absolute charge of party nominations in the enactment of the State primary law.  The propriety of this is not for our consideration, but it is material in determining what is meant by "the next succeeding election" in those statutes which provide that the appointee to a vacant office shall only hold until such succeeding election, or until his successor is elected at such succeeding election.  We must

consider the laws with reference to the primary and the general election laws and the laws as to vacancies together, and from them all determine what is meant by the term "next general election" in section 10918, Revised Statutes 1909, which section reads:

"There shall be elected by the qualified voters of this State, at the next general election for state and county officers, and every four years thereafter, a State superintendent of public schools, who shall enter upon the discharge of his duties on the second Monday of January next following his election, and hold his office for the term of four years and until his successor is elected and qualified. The election of said superintendent and the returns thereof shall be the same in all respects as provided for the election of other state officers; and in case of vacancy occurring in said office, by death, resignation or otherwise, the Governor shall fill the same by appointment, who shall hold his office until the next general election.".

Our contention is that if all these laws (primary laws, general election laws and vacancy laws) had been enacted at one time and in one bill covering the general subject, then there would be no question that the term "next general election" as used in section 10918 would mean the next general election at which all the machinery of elections could be called into play, including the primary laws. And we can see no difference in the construction to be given simply because the primary law was enacted at a later date. The laws still must be construed together and as if enacted at one and the same time. With this construction in the instant case, and in Hagerman's case, supra, "the next general election" would not be the general election in 1916 but would be the general election of 1918. This because the death occurred after the election machinery had been put in operation and because on June 1, 1916 (sixty days prior to August 1, 1916) there was no vacancy in the office. And because the Legislature has made no provision for a contingency of the character involved here, and it is not for us to write it into the law.

We are cited, however, to section 5870, which reads:

"Vacancies occurring after the holding of any primary or where no person shall offer himself as a candidate before such primary, shall be filled by the party committee of the district, county or State, as the case may be: Provided, however, that no name shall be allowed on any ticket until the required fee shall have been paid."

To our minds this section does not solve the situation. It is true this is the section relied upon as the authority for the Republican State Committee to place relator's name on the Republican ticket, but it does not reach his case. Without this section there is no authority for relator's nomination by the Republican State Committee. The office of Superintendent of Public Schools was not (at the date of the primary, August 1, 1916, or sixty days prior thereto, June 1, 1916) an office to be filled at the November election in 1916. It was not an office on the tickets nominated at that primary. It was not an office for which a nomination could have been made at that primary, or for which aspirants could have filed sixty days prior thereto.

The word "Vacancies" used in this statute has reference only to vacancies upon the tickets nominated August 1st, and to no other vacancies. There was no vacancy upon any ticket nominated August 1, 1916, and this part of the statute affords no authority for relator's nomination. There was no vacancy upon the ticket for this office because this office at the date of the primary was not an office to be filled and therefore could not have been upon such primary ticket.

Nor does the phrase in said statute "or where no person shall offer himself as a candidate for such primary" in any wise aid relator here. That clause has reference (and reference solely) to an office for which candidates could have run at the August primary, but for which they did not run. In this case there was no such office for which candidates could have run in the August primary, nor for which they could have filed sixty days prior thereto. Had the office of Superintendent of Pub-Schools been vacant June 1, 1916, then this statute would

apply, but it does not apply in this case. Had there been a vacancy in this office on June 1, 1916, then "the next general election" would have been the election of November 7, 1916, because all of the election machinery of the State could have been invoked. But the facts of the instant case do not bring it within the supposed case.

It is clear that section 5870 has no application and did not authorize the committee to act. Nothing in State ex rel. v. Kortjohn, 246 Mo. 34, contravenes these views. In that case we were dealing (1) with an office for which a nomination could have been made at the primary in August and for which candidates could have filed sixty days prior thereto, and (2) with newly organized parties. · We would not gainsay a single word uttered in that opinion, but the facts of that case and the law discussed in that case have no application here.

These views explain the dissent in Hagerman's case, and in our humble judgment afford at least one reason for our judgment in this case.

II. Secondly, the judgment denying relator our writ is most certainly sustained by another view of the law. The office involved is one of the executive offices of the State provided for in the Constitution. In other words, it is what may properly be called a constitutional office. Not only is the office created by the Constitution, but the term is fixed by that instrument, and the times at which elections for that office are held are likewise fixed by the Constitution. No law of the State can change the term thus fixed, neither can a law of the State change the times at which elections for such office can be held. Any such law would be unconstitutional and void.

Section 2, article 5, of our Constitution reads:

"The term of office of the Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney-General and Superintendent of Public Schools shall be four years from the second Monday in January after their election, and until their successors are elected and qualified; and the Governor and State Treasurer shall be ineligible to re-election as their own

successors. At the general election to be held in the year one thousand eight hundred and seventy-six, and every four years thereafter, all of such officers, except the Superintendent of Public Schools, shall be elected, and the Superintendent of Public Schools shall be elected *at the general election in the year one thousand eight hundred and seventy-eight, and every four years thereafter.*" (The italics are ours).

The Constitution thus not only names the date for the first election for such office but for all other elections for such office. It must be a noticeable fact that the Constitution-makers were dealing with seven offices and saw fit to group them in two groups, i. e., six in one group and the seventh one in another group. For six of these offices the Presidential election years were selected as the years for filling those offices by election. The office involved here was placed in a group to itself and was assigned a time when the rancor of partisan politics would not be so great. The Constitution-makers must have had a purpose in this clearly defined grouping of state officers. Something must have suggested the separate election for Superintendent of Public Schools, and when the high character of the office is considered the reason is apparent. The desire was to take this office, so far as possible out of the machinations of partisan politics. The public schools were a sacred institution—too sacred, as our forefathers thought, to be dragged into the mire of pure partisan politics. To our mind it was for this reason that the makers of the Constitution not only fixed the date of the first election for the office, but the dates for each subsequent election.

Nor does the constitutional provision as to vacancies change the time for the elections for such office. The Constitutional provision as to vacancies is section 11 of article 5 which reads:

"When any office shall become vacant, the Governor, unless otherwise provided by law, shall appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed and qualified according to law."

The term "according to law" includes constitutional provisions, and this section will harmonize with section 2, article 5, supra, of the Constitution, and will likewise harmonize with the construction we have given said section 2, article 5, as to the dates for elections in this office.

Relator relies, however, on section 10918, Revised Statutes 1909, which section we have quoted in full above. If this section is to be given a literal construction in so far as it relates to the time to which an appointee can hold the office, it would contravene section 2, article 5, of the Constitution, supra. Whilst this constitutional provision has not been up for consideration by the courts, it has been several times construed by the Legislature. Thus in two of the constitutional offices mentioned in said section 2 of article 5 of the Constitution, the Legislature, in section 11803, Revised Statutes 1909, has said:

"When a vacancy occurs in either the office of State Auditor or State Treasurer, the Governor shall immediately appoint an Auditor or Treasurer to fill such vacancy for the residue of the term in which the vacancy occurred, and until his successor is elected or appointed, commissioned and qualified."

The constitutional provision as to the dates of election for those offices is in the same words as the provision with reference to the office here involved. In other words, it fixes the date for the first election and for all succeeding elections. In this statute, section 10803, the lawmakers recognize the construction which we have given to the Constitution by providing that the appointees shall hold for the "residue of the term."

In case of a vacancy in the office of Attorney-General the Legislature has again emphasized the fact that such body viewed the Constitution as we have viewed it. By section 1043, it is said:

"If any vacancy shall happen from any cause in the office of the Attorney-General, circuit attorney, prosecuting attorney or assistant prosecuting attorney, the Governor, upon being satisfied that such vacancy ex-

ists, shall appoint some competent person to fill the same *until the next regular election for Attorney-General,* prosecuting attorney or assistant prosecuting attorney, as the case may be." (Again the italics are ours.)

The Legislature could only have had in view the provisions of section 2 of article 5 of the Constitution in so far as the office of Attorney-General is concerned. By the language used they recognize that there was a fixed date for such elections in the Constitution.

Not only do we have the legislative construction of this constitutional provision, but even stronger, we find a recognition thereof in the Constitution itself. Thus section 16 of article 5 reads:

"In case of death, conviction or impeachment, failure to qualify, resignation, absence from the State or other disability of the Governor, the powers, duties and emoluments of the office *for the residue of the term,* or until the disability shall be removed, shall devolve upon the Lieutenant-Governor."

Note the fact that this section recognizes both the term and the dates of the election for the office of Governor, and provides that the legal successor shall hold "for the residue of the term."

Viewing said section 10918 in the light of these legislative constructions of the Constitution and of the Constitution itself, we are constrained to take the position that the term "next general election" as used in said section means the next general election for Superintendent of Public Schools. Such a construction makes it harmonize with the Constitution and with the legislative construction given to the Constitution. If this construction is not given it the section cannot stand in the face of the Constitution. It is presumed that the Legislature intended the act to be in harmony with the Constitution and this construction makes it so. Under these views our judgment is correct, and it was upon these views that a majority of our brothers agreed. *Woodson, Faris* and *Revelle, JJ.,* concur in paragraph two and in result; *Bond, J.,* concurs in paragraph one and result; *Walker* and *Blair, JJ.,* dissent.