(No. 7211. October 4, 1944)

P. C. WINTER, Plaintiff, v. F. L. DAVIS, Clerk of the District Court and ex-officio auditor and recorder of Madison County, Idaho, Defendant.

(152 P. (2d) 249.)

Z. Reed Millar, for plaintiff.

C. W. Poole and W. A. Ricks, for defendant.

Bert H. Miller, Attorney General of Idaho; William A. Brodhead, Thomas Y. Gwilliam, Frank Langley, and J. R. Smead, Assistant Attorneys General, appearing Amici Curiae.

DUNLAP, J.—■ This is a special proceeding brought in this Court for the purpose of obtaining a writ of mandamus, and the parties thereto should be designated as provided by Sec. 13-101, I. C. A. We have accordingly changed the designation of the parties to conform to the directions contained in the statute. (*Shaw v. McDougall*, 56 Ida. 697, 58 P. (2d) 463.)

By this action, plaintiff P. C. Winter seeks a writ of mandamus to compel the clerk of the District Court and ex-Officio auditor and recorder of Madison County, (defendant here), to place his name on the official ballot at the general election to be held in November of this year, as the Republican candidate for Clerk of the District Court and ex-officio auditor and recorder of said county.

Pertinent facts may thus be stated: At the general election of November, 1938, one John T. Elliott was elected to said office. On the second Monday of January, 1939, he qualified and entered upon the duties of his office, and continued to hold said office and exercise the powers and duties thereof until the 13th day of October, 1942, when his resignation was accepted by the Board of Commissioners of said county, and on said date one Leland E. Raybould was appointed to fill the vacancy thus created. Mr. Raybould qualified as such appointee and entered upon and discharged the functions and duties of the office and continued to hold the same until the 16th day of December, 1942, on which date his resignation was accepted, and on said date the defendant, F. L. Davis was appointed to fill the vacancy of the unexpired term for which Mr. Elliott had been elected, or until the second Monday of January, 1943.

Mr. Raybould had been a successful candidate for the same office in the election in November, 1942, but he failed to qualify as such official for the following term for which

he had been elected, as aforesaid. Mr. Davis, on January 11th, 1943, was again re-appointed to said office by the County Commissioners, and on said date qualified for said office and has since said time continued to discharge the duties thereof.

Plaintiff P. C. Winter was nominated for the office as a write-in candidate at the primary election held in said county on the 13th day of June, 1944, and at said election, defendant F. L. Davis was also nominated for said office, as a write-in candidate.

From the agreed statement of facts it does not appear upon which ticket said persons claim to have been nominated, but from the statements made by counsel in the argument of the cause before this court it would appear that Mr. Winter is the Republican nominee, and Mr. Davis the Democrat nominee.

There was no certificate of nomination filed in the office of the clerk of said county for the primary election of June 13th, 1944 for said office, and there was no space provided on the official ballot for said office, in said election, and no names were printed on said official ballot for said office.

Plaintiff did not make or file with the auditor of the county any statement of expenditures of any sums paid out by him to obtain the nomination in the primary election of June, 1944, as required by the provisions of Sec. 33-619, I. C. A., until July 31st, 1944, at which time such statement was filed by him, and defendant did not notify the plaintiff that the filing by him of such statement was required by law as provided by the said provisions of said statute.

Petition for the writ was filed in this Court by the plaintiff on July 21st, 1944, and on July 24th, 1944, an alternative writ was issued, directed to defendant F. L. Davis requiring him as such county official to certify plaintiff, and to place his name on said official ballot for the general election of November, 1944, or to show cause before this Court why he has not done so.

Defendant has filed an answer and an amended answer, and return to the writ, also a motion to quash the alternative writ and a demurrer thereto, and to the application for the writ, and at the hearing waived his right to consideration of the latter two pleadings and consequently the matter is before us now on the petition for the writ and the answer and return thereto, together with the said agreed statement of facts.

In his brief and argument, plaintiff bases his action on the sole question of whether or not the appointment of defendant F. L. Davis to such office in the manner aforesaid, was an appointment for the full four year term beginning the second Monday of January, 1943, or until the next general election to be held in November, 1944.

To sustain his position in refusing to certify the plaintiff's name for election, defendant relies upon the decision of this court in the case of *Budge v. Gifford*, 26 Ida. 521, 144 P. 333, and at first glance it might appear that this case is in point as sustaining his position.

However, that decision is based upon certain provisions of our constitution pertaining to the office of Justice of the Supreme Court and when compared with our other constitutional provisions pertaining to the office in question, the distinction between the facts in that case and the law applicable and the facts in this case, and the law applicable here, become apparent.

It is true that both offices, to-wit: the office of Justice of the Supreme Court, and the office of Clerk of the District Court are provided for in one article of our Constitution pertaining to the judicial department, to-wit: Art. 5. Sec. 6 of Article 5 provides that justices of this court are to be elected by the electors of the state at large and that their terms of office shall be for a period of six years. Sec. 16 of said article provides for the election of a clerk of the district court at the time and in the manner provided by law for the elections of members of the legislature and further provides that a clerk so elected shall hold his office for a term of four years.

Sec. 19 of said article reads as follows: "All vacancies occurring in the offices provided for by this article of the constitution shall be filled as provided by law."

In considering this section of said Article 5, this Court, in the case of *Budge v. Gifford,* said: "Under the provisions of Sec. 19 of said Art. 5, it is provided that vacancies in any of said offices must be filled as provided by law and if that were the only provision of the constitution with reference to vacancies, the contention of the defendant as to the plenary power of the legislature in filling such vacancies would be correct. But in determining this question we must take into consideration a part of Sec. 6 of Art. 4 of the con-

stitution which relates to the filling of vacancies and is as follows:

" 'If the office of a justice of the supreme court or district court, Secretary of State, state auditor, state treasurer, attorney general, or superintendent of public instruction, shall be vacated by death, resignation or otherwise, it shall be the duty of the governor to fill the same by appointment and the appointee shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law.'

"Under that provision of the constitution, whenever a vacancy occurs in the office of the justice of the supreme court it becomes the duty of the governor to fill the same by appointment. This is an absolute grant of appointive power to the governor by the constitution itself and does not depend upon legislative action or legislative sanction. That power given the governor is not limited or controlled in any manner by the provisions of said sec. 19 of art. 5. If that were so, the legislature might provide that when a vacancy occurs in the office of a justice of the supreme court, or any other office named in said sec. 6, such vacancy should be filled by special election or by the legislature or in any other manner than by appointment by the governor, and thus deprive him of that power, the exercise of which is not merely permitted but is made mandatory by the provisions of said section. The language there used with reference to the vacancy is that the governor shall 'fill the same by appointment' and with reference to the appointee, that he 'shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law' * * * In view of these considerations, it must be held that said Sec. 19 has no application whatever to a vacancy in the office of the supreme or district courts, but that it relates wholly to vacancies in other offices provided for by art. 5, the filling of which is not otherwise provided for by the constitution."

It is thus apparent that the power to fill a vacancy in the office of justice of the supreme court is directly vested by our constitution in the governor of the state. We find no constitutional provisions vesting in the governor such power to fill a vacancy in the office of the clerk of the district court, and as has heretofore been stated, said sec. 19 of art. 5 provides that such vacancy shall be filled as

provided by law. This of course, would imply and require the vacancy to be filled in the manner as provided by the legislative power of the state, and thus we have the distinction as to the law applicable in the filling of a vacancy in the office of justice of the supreme court, and a vacancy in the office of clerk of the district court.

Acting on this power, the legislature, in Sec. 57-906, I. C. A., has provided, "all vacancies in any county or precinct office of any of the several counties of the state except that of county commissioners (who shall be appointed by the governor) shall be filled by appointment by the county commissioners of the county in which the vacancy occurs, *until the next general election when such vacancy shall be filled by election.*" (Emphasis ours.)

Sec. 57-914, I. C. A., provides, "any of said officers that may be elected or appointed to fill vacancies, may qualify and enter upon the discharge of the duties of their office immediately thereafter, *and if elected they may hold the same during the unexpired term for which they were elected, and until their successor is elected and qualified, but if appointed, they shall hold the same only until their successor is elected and qualified.*" (Emphasis ours.)

Our attention is called to Sec. 33-202, I. C. A., a portion of which provides that at the general election in 1922 and every fourth year thereafter there shall be elected in every county of the state, a clerk of the district court who is ex-officio auditor and recorder, and it is urged that this provision would prohibit the holding of an election for said office except on the years designated by this provision. To sustain such contention, however, we would be required to wholly disregard the provisions of secs. 57-906, and 57-914, I. C. A., which, in plain and unambiguous language provide that an appointee to such office shall hold the office only until the next ensuing election. This we cannot do, but must consider and give force and effect to each one of these provisions and we do not find them in conflict as it is obvious that in construing all of these provisions together, it was the intent of the legislature that an election be held for the election of certain designated (including the clerk of the district court) officials, during the years designated except in the case of a vacancy, and that at the ensuing election following such vacancy the place thus vacant was to be filled by the electors for the balance of the unexpired term.

It is strongly contended that by the use of the words "until the next general election" in sec. 57-906, I. C. A., the legislature intended, an election provided by statute for the particular office, and that therefore under this provision of our statute (Sec. 33-202, I. C. A.) the defendant would hold office for the full unexpired term ending the second Monday of January, 1947, since no election could be lawfully held for such office until November of 1946. Many decisions are cited in support of such contention but we do not find that they are based upon constitutional and statutory provisions which we are required to consider in this case.

The decisions construing this, and similar, phrases of legislative enactment are collected in the annotation appearing in 132 A. L. R., beginning p. 574. As there pointed out, according to one line of cases, the election indicated by the phrases "until the next general election," "the next election by the people," "the next annual election," "until the next general election or until their successors are duly elected and qualified," etc., is the next election at which the successor to the encumbent of the office would have been elected if there had been no vacancy, and according to another line of cases, the election referred to, is the election next in point of time after the vacancy occurs.

To sustain his contention that the phrase "until the next general election" should be construed to mean "the next election at which the successor to the encumbent of the office would have been elected if there had been no vacancy," defendant relies strongly upon the case of *People v. Col*, 132 Cal. 334, 64 P. 477, and *State ex rel Evrard v. Roach*, 269 Mo. 500, 192 S. W. 745. These decisions however, are based upon constitutional and statutory provisions of their respective states, and in view of the wording of the constitutional and statutory provisions of this state, which are somewhat different, they are not controlling, and we are called upon for the correct answer to the question involved, to base our conclusion on the wording of the pertinent provisions of our own law.

The decision in the California case was based upon a statutory provision providing that the board of supervisors had the power to fill by appointment all vacancies that may occur in any office, with certain exceptions, the appointee to hold office for the unexpired term or until the next gen-

eral election, and in holding that the phrase "until the next general election" should be held to mean the next election for the particular office, and that there was no provision of the California law for electing a county auditor (the office involved) except at the times specified by statute, the court said: "We think the phrase 'next general election' used in subdivision 19 sec. 25, refers to the general election for filling the particular office to which the person is appointed, or, in other words, to the general election provided for as to all the county officers, in sec. 58. This was plainly the intent of the legislature, for in the very same act express provision is made in sec. 17, for filling the unexpired term of a supervisor by election at the next general election. There is no provision in the act for filling the unexpired term of any other county officer by election. We cannot believe, that if the legislature had intended to provide for filling the unexpired term of all county officers at the next general election, it would have made the express provision for such election as to supervisors and not to any other county officer. Sec. 58 says 'All elective county and township officers, and city justices of the peace, except otherwise provided for in this act, shall be elected at the general election at which the governor is elected.' The auditor of Santa Clara is an elective county officer. There is no other provision in the act for the election of such county officers. The logical conclusion would be that, when the words 'until the next general election' were used, reference was made to the general election referred to and provided for in sec. 58. It is claimed that the construction herein given leaves the words 'for the unexpired term' without meaning. If 'the unexpired term' and 'the next general election' refer to precisely the same period of time, it was not necessary to use both expressions. But there may arise cases in which the unexpired term would not mean until the next general election. In cases where the board of supervisors have the sole right to fill an office by appointment, such as county physician or game warden in case of vacancy the appointee might hold until the expiration of the term only. So after a general election for county officers in November the newly-elected officers do not take their office until the first Monday after the 1st day of January following. A vacancy might occur after the election and before the beginning of the term of the newly-elected official. In such case the appointee would only hold for the unexpired term."

The Missouri case is based upon constitutional and statutory provisions of that state and in the interest of brevity we shall not point out the distinction between them and our own provisions here, but they are clearly indicated in the decision.

Sec. 57-914, I. C. A., makes a distinction as to the terms of officers elected and appointed to fill vacancies. If they are elected to fill a vacancy, they hold during the unexpired term to which they are elected, and until their successor is elected and qualified. If appointed, they hold by appointment only until their successor is elected and qualified. It is obvious the legislature had in mind by this enactment: that a vacancy to fill an unexpired term could be filled by election, otherwise it was needless to make a distinction between the term of an officer appointed to fill a vacancy and the term of an officer elected to fill a vacancy. The wording of Sec. 57-906, I. C. A., would corroborate this view because it is there specifically provided that the appointee shall fill the vacancy only until the next general election, when such vacancy shall be filled by election.

The other cases relied upon by defendant in this case are likewise apparently based upon different constitutional and statutory provisions.

Sec. 33-201, I. C. A., prescribes and defines the term "general election," as follows:—"Time for holding general elections.—A general election shall be held in the several precincts in this state on the Tuesday succeeding the first Monday of November, 1920, and on the Tuesday succeeding the first Monday of November every alternate year thereafter."

In view of these various statutory provisions, it is obvious the legislature intended the term of a person appointed to fill an office of this nature should expire at the bi-annual November election; that the office should be filled thereat by the qualified electors and upon this qualification of the person elected at such election, he would assume the duties of the office.

The views herein expressed find support in decisions of the Supreme Court of Kansas based on similar constitutional and statutory provisions. In *State ex rel Brown v. Lutz,* County Clerk, 116 Kan. 621, 227 P. 334, reference is made to a Kansas statute identical with our Sec. 57-914, I. C. A. See also *Hamilton v. Bruab,* 131 Kan. 392, 292 P. 396; *Welch*

*v. Meecham,* 31 Kan. 435, 2 P. 816; *Rice v. Stevens, et al,* 25 Kan. 302, and in which it is said: "The theory of our law is that officers shall be elected whenever it can be conveniently done."

 It is clear that by our statutory provisions herein referred to, our legislature has recognized the democratic principal which requires that elective offices, so far as possible, be filled at all times by encumbents chosen by the electors and that it is the general policy of the law that vacancies in elective offices should be filled at an election as soon as practicable after the vacancy occurs, and appointments to fill vacancies should be effective only until the people may elect.

 This brings us to the question of the effect, if any, on plaintiff's right to have his name appear upon the ballot by reason of his failure to file within the time, and as required by, Sec. 33-619, I. C. A., a verified statement of expenditures of any sums paid out by him to obtain the nomination in the June primary election. It should be remembered in this connection that the auditor of Madison County failed to notify the plaintiff within ten days after the June nominating election, that the filing of such statement is required, and it appears the statement was not filed by plaintiff until July 31st, 1944, some 27 days after the time required by statute.

Sec. 33-620, I. C. A., provides in effect, that a candidate for nomination for any office who fails to file the statement provided by law within the time required, is guilty of a misdemeanor and upon conviction is subject to fine or imprisonment, or both, and shall be ineligible to become a candidate to the office to which he aspires, and that any candidate having received the nomination who shall fail to make and file such statement shall be and is prohibited from having his name appear on the official ballot.

We had occasion to consider this question under a similar statute in the case of *Fuller v. Corey,* 18 Ida. 558, 110 P. 1035, and there said: "The only question with which we have to deal at this time is that of the power of the county auditor to refuse to have the name of a candidate printed on the official ballot where he has been declared by the canvassing board to be the nominee of his party. On this question there can be but little doubt. The duty of the auditor is purely ministerial; he is vested with no judicial powers

or functions in the matter. He cannot sit in judgment on the candidate and without a hearing declare him guilty of a misdemeanor and inflict the penalties. (*Miller v. Davenport*, 8 Ida. 593, 70 P. 610.) It is clearly the duty of the auditor to perform the duties required of him by law, and until the candidate has been judicially declared ineligible to have his name placed upon the ticket, the auditor has but one duty to perform, and that is to cause the candidate's name to be printed on the official ballot, along with all the other nominees for the respective offices. If the candidate has violated the law and is subject to its penalties that must be determined in the orderly and due process of law."

It therefore follows that the peremptory writ of mandate petitioned for herein, must issue, and it is so ordered.

Costs to plaintiff.

Givens and Budge, JJ., concur.

Holden, C. J., and Ailshie, J., did not sit at the hearing nor participate in the decision.