336 P.2d 115

Faber F. TWAY, Plaintiff,

v.

Joe R. WILLIAMS, State Auditor of the
State of Idaho, Defendant.

No. 8746.

Supreme Court of Idaho.

Feb. 20, 1959.

1

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for appellant.

Frank L. Benson, Atty. Gen., Robert D. Wennergren, Asst. Atty. Gen., for respondent.

KNUDSON, Justice.

This is an original proceeding in this Court for a writ of mandate to be directed to Rulon Swensen, former State Auditor of the State of Idaho, and now to his successor Joe R. Williams, State Auditor of the State of Idaho, commanding him to issue

**4**

and deliver to plaintiff a warrant payable to plaintiff, drawn upon the State Treasurer of the State of Idaho, in the sum of $791.66 in payment of plaintiff's alleged salary as District Judge of the Ninth Judicial District of the State of Idaho for the period from November 1, 1958 to November 30, 1958, or in the alternative show cause before this Court why the alternative writ of mandate should not be made peremptory. The alternative writ of mandate issued and defendant regularly filed his answer to plaintiff's complaint and his return to the alternative writ of mandate.

A consideration of the questions here involved necessitates a construction of chapters 15 and 190 of the Session Laws of 1957. Said chapter 15 approved February 6, 1957, by its provisions created an additional office of district judge in and for the ninth judicial district, the wording of which chapter is as follows:

"Section 1. An additional office of district judge is hereby created in and for the Ninth Judicial District as that district is defined in Section 1–810 Idaho Code.

"Section 2. Upon the passage and approval of this act, the Governor shall forthwith appoint a person possessing the qualifications required by the constitution and laws of this state to fill the office created by Section 1 hereof. Such appointee shall hold such office until the next general election for district judges and until his successor is elected and qualified. Thereafter such office shall be filled by election and appointment as provided by law. Such appointee and persons thereafter elected or appointed to fill the office created by Section 1 hereof, shall receive the same compensation, and have and exercise the same powers and duties as other district judges, and as provided by the constitution and laws of this state.

"Section 3. An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in full force and effect from and after its passage and approval."

At the time said chapter 15 became a law (February 6, 1957) sec. 1–810, I.C. defined the ninth judicial district as follows:

"Ninth district.—The ninth district comprises the counties of Bonneville, [Clark], Fremont, Jefferson, Madison and Teton."

Chapter 190, Session Laws 1957 approved March 12, 1957, by its provisions changed the boundaries of the ninth judicial district and also created the twelfth judicial district and provides:

"Section 1. That Section 1–810 of Chapter 8, Title 1, of the Idaho Code, as amended, be, and the same is hereby amended to read as follows:

"1–810. Ninth District—The ninth district comprises the * *county* of Bonneville * * *.

"Section 2. That Chapter 8, Title 1, of the Idaho Code, as amended, be, and the same is hereby amended by adding thereto a new section following Section 1–813, to be known and designated as 1–814, and to read as follows:

"1–814. Twelfth District.—The twelfth district comprises the counties of Clark, Fremont, Jefferson, Madison, and Teton Counties, with the chambers of the judge of said district, when not holding court in any other of said counties of the district, in Madison County."

There is no dispute as to the facts involved. It is conceded by defendant that plaintiff has complied with all requirements of law in being elected for the next full term of the district judgeship created by said chapter 15, if such was legally possible. It is also conceded that plaintiff properly entered upon and performed the duties of said office during the month of November 1958, if it existed, and if he properly filled a vacancy therein, and that plaintiff properly demanded of defendant the issuance of a warrant on the Treasurer of the State of Idaho for the payment of his salary for that month. The defendant's refusal to comply with plaintiff's demand is based upon two principal grounds (1) that the office in question did not legally exist in November 1958, and (2) that plaintiff did not, during November 1958, legally fill a vacancy in such office even though the office existed.

We will first consider the question whether, under the statute mentioned, a new office of district judge was created and existed during the month of November 1958. There can be no question that the legislature possesses the authority to increase or decrease the number of district judges. The Idaho constitution Art. 5, Sec. 11 provides:

"District courts—Judges and terms. —The state shall be divided into five judicial districts, for each of which a judge shall be chosen by the qualified electors thereof, whose term of office shall be four years. And there shall be held a district court in each county, at least twice in each year, to continue for such time in each county as may be prescribed by law. *But the legislature may reduce or increase the number of districts, district judges and district attorneys.* This section shall not be construed to prevent the holding of special terms under such regulations as may be provided by law." (Emphasis supplied.)

In the case of Streeter v. Mac Lane, 19 Idaho 229, 112 P. 1042, 1044, this Court held that Idaho constitution

"* * * expressly granted to the legislature the power to change and alter the boundaries of such districts and the number of district judges, not only in accordance with the number of districts, but also the number of district judges in each district, * * *"

Chapter 15, supra, having been regularly enacted and pursuant to its emergency provision became in full force and effect upon its approval on February 6, 1957. Later and during the same 34th Session of the Legislature, chapter 190, supra, was regularly enacted and was approved on March 12, 1957. The legislative session adjourned March 16th and said chapter 190 became effective May 16, 1957.

At the time chapter 15, supra, was enacted the ninth judicial district was comprised of six counties. By enactment of chapter 190, supra, said judicial district was reduced to the area of Bonneville County alone. Defendant contends that the policy and purpose of said chapter 15 was to provide two district judges for the ninth judicial district as that district then existed and that upon enactment of chapter 190, supra, the policy and purpose of said chapter 15 was "undercut and rendered inoperative".

█ If this contention is sound, it necessarily follows that said chapter 15 was repealed by the enactment of said chapter 190. With this contention we disagree. There is no ambiguity in the language or provisions of said chapter 15. It contains no language that indicates or infers that in the event of the change of boundaries of the district the office thereby created would automatically cease to exist. There is nothing in the wording that could be construed as distinguishing the office thereby created from any other office of district judge in this state. In fact it specifically provides that the term of office, compensation, powers and duties, etc., shall be the same as other district judges as provided for by the constitution and laws of this state. The wording "as that district is defined in Section 1–810 Idaho Code" is purely an expression of identification of the district and not words of limitation affecting the office created. Such words neither express nor imply a legislative intent or purpose to make the office created by the act coexistent with the then boundaries of the ninth judicial district. Had the legislature so intended it must be assumed that it would have used language that would have so provided.

It is a general rule that the title to an act may be resorted to as an aid in determining the intent of the legislature. State v. Mead, 61 Idaho 449, 453, 102 P.2d 915; State v. Forch, 26 Idaho 755, 761, 146 P. 110; 82 C.J.S. Statutes § 350, p. 731.

The title of said chapter 15 clearly discloses the purpose of the act to be "*creating an additional office of district judge in and*

*for the ninth judicial district*", no provisional limitations are implied.

 Applying the rules that statutes in pari materia should be construed together, we find that said chapter 15 was enacted in the presence of a constitutional provision specifically authorizing the legislature to increase or reduce the number of district judges and to change the boundaries of any judicial district. Prior to the enactment of said chapter 15 the legislature many times altered and changed the boundaries of judicial districts and also created additional offices of district judge. Ch. 2, S.L.1911; Ch. 21, S.L.1917; Ch. 99, S.L.1917; Ch. 54, S.L.1921; Ch. 55, S.L.1921. In Meyers v. City of Idaho Falls, 52 Idaho 81, 90, 11 P.2d 626, 629, this Court held that in attempting to arrive at legislative intent:

" 'The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior and subsequent sessions, and even those which have been repealed.' * * *

" 'In arriving at the legislative intent as to an act alleged to have impliedly repealed or superseded another or other statutes, the nature of the several acts involved, including their respective titles, the history of such enactments, the state of the law when the acts were passed, and the history of the times, as well as the objects and purposes sought to be attained, are proper matters for consideration.' "

 Said chapter 15 having been enacted in the light of such constitutional provision and repeated legislative enactments relating to the same subject, there can be no doubt that the office thereby created was, at the time of its creation, intended to be and became subject to the same regulations and controls as any other office of district judge in this state.

Defendant's contention that the additional judgeship created by the enactment of chapter 15, supra, became nonexistent after the provisions of said chapter 190 became effective cannot be sustained. We are not unmindful that each of the various rules of construction cited by defendant may be properly applied where ambiguity or uncertainty exists in the subject to be construed, but such is not here involved.

 It is a primary canon of statutory construction that where the language of a statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion of construction. Moody v. State Highway Dept., 56

Idaho 21, 26, 48 P.2d 1108; Village of Oakley, in Cassia County v. Wilson, 50 Idaho 334, 339, 296 P. 185; Boise Ass'n of Credit Men v. Seawell, 47 Idaho 473, 476, 276 P. 318; Drainage Dist. No. 2 of Ada County v. Ada County, 38 Idaho 778, 784, 226 P. 290; State v. Jutila, 34 Idaho 595, 597, 202 P. 566.

By enactment of said chapter 15, a new district judgeship for the ninth judicial district was created, and by the enactment of said chapter 190 the boundaries of the ninth judicial district were changed and the twelfth judicial district was created. Each act was separate, distinct and without reference to the other. Chapter 190, supra, is clear and express in its provisions. It contains no reference, either stated or implied, to the office created by chapter 15, supra, and where such is the fact, no rule of construction authorizes its interpretation to include such reference. We are not permitted to read into a statute a provision not found therein. The provisions of said chapters 15 and 190 are not in any respect inconsistent with or repugnant to each other. Had the legislature intended at the time of the enactment of said chapter 190 to repeal said chapter 15 it could, and it is to be presumed that it would, have done so by positive and express action. Clearly said chapter 190 does not expressly or by implication repeal or render inoperative said chapter 15 or any provision thereof.

We shall now consider defendant's second contention that plaintiff did not, during November 1958, legally fill a vacancy in the office created by chapter 15. Plaintiff was not appointed by the governor to fill any vacancy relating to the office created by the enactment of said chapter 15. Plaintiff's claim for compensation is bottomed upon the theory that he was, at the election held August 12, 1958 elected to fill the office created by said chapter 15, and that he was, by virtue of said election and in the absence of any appointment filling the office, entitled to occupy the office immediately following the filing of his official oath. It is true that a vacancy in the office created by said chapter 15 existed from the day said chapter was approved until filled in the manner provided by law. The question is can the office thereby created be filled in the manner contended for by plaintiff? The answer to this question is found in the Idaho constitution Art. 4, Sec. 6, which provides:

"Governor to appoint officers.—The governor shall nominate and, by and with the consent of the senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. If during the recess of the senate, a vacancy occurs in any state or district office, the governor shall appoint some fit person to discharge the duties there-

of until the next meeting of the senate, when he shall nominate some person to fill such office. If the office of a justice of the Supreme or *district court,* secretary of state, state auditor, state treasurer, attorney general, or superintendent of public instruction shall be vacated by death, resignation *or otherwise, it shall be the duty of the governor to fill the same by appointment,* and the appointee shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law." (Emphasis supplied)

Although the foregoing quoted section of the constitution is controlling upon the question under consideration, it will be noted that sec. 1–702, I.C. also provides for the appointment of a district judge upon the creation of a new judgeship. Its provisions are:

"District judges—Election and term —New district judgeship.—The district court is presided over by district judges chosen by the qualified electors of their respective districts for a term of four years, except, *that upon the creation of a new district judgeship in any district, such judge shall be appointed to hold office until the next general election for district judges,* unless otherwise provided in the act creating such judgeship, and until his successor is elected and qualified." (Emphasis supplied)

It should also be noted that the very act (chapter 15 supra) creating the office herein controversy directs that the *governor shall appoint* a qualified person to hold the office *until the next general election for district judges.* In the case of Budge v. Gifford, 26 Idaho 521, 144 P. 333, 335, this Court had under consideration a similar question wherein the matter of filling a vacancy occurring in the offices mentioned in said Sec. 6, Art. 4 of the Idaho constitution (the office of district judge being one) was thoroughly considered and decided. The Court in that case said:

"Under the provisions of section 19 of said article 5, it is provided that vacancies in any of said offices must be filled as provided by law, and, if that were the only provision of the constitution with reference to vacancies, the contention of the defendant as to the plenary power of the Legislature in filling such vacancies would be correct. But in determining this question we must take into consideration a part of section 6 of article 4 of the Constitution which relates to the filling of vacancies, and is as follows:

" 'If the office of a justice of the Supreme or district court, Secretary of State, State Auditor, State Treasurer, Attorney General, or superintendent of public instruction shall be vacated by death, resignation or otherwise, it shall be the duty of the gov-

**10**

ernor to fill the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law.'

"Under that provision of the constitution, whenever a vacancy occurs in the office of a justice of the Supreme Court, it becomes the duty of the Governor to fill the same by appointment. *This is an absolute grant of appointive power to the Governor by the Constitution itself and does not depend upon legislative action or legislative sanction.* That power given the Governor, is not limited or controlled in any manner by the provisions of said section 19 of article 5. If that were so, the Legislature might provide that when a vacancy occurs in the office of a justice of the Supreme Court, or any other office named in said section 6, such vacancy should be filled by special election or by the Legislature, or in any other manner than by appointment by the Governor, and thus deprive him of that power, the exercise of which is not merely permitted but is made mandatory by the provisions of said section. The language there used with reference to the vacancy is that the Governor 'shall fill the same by appointment', and, with reference to the appointee, that he 'shall hold his office until his successor shall be elected and qualified in such manner as may be provided by law.' (Emphasis supplied)

\* \* \* \* \* \*

"In the view of these considerations, it must be held that said section 19 has no application whatever to a vacancy in the office of the Supreme or district courts, but that it relates wholly to vacancies in other offices provided for by article 5, the filling of which is not otherwise provided for by the Constitution."

The foregoing mentioned case has been repeatedly discussed and cited with approval and is controlling in this case. Winter v. Davis, 65 Idaho 696, 152 P.2d 249; Moon v. Masters, 73 Idaho 146, 247 P.2d 158. It is urged by plaintiff that by virtue of his election on August 12, 1958 and in the absence of an appointment filling the office, he was entitled to file his oath and take office. Plaintiff predicates such right upon the provisions of sec. 59–909, I.C., which provides:

"Vacancies occurring immediately before election—Vacancies in office of probate judge of justice of the peace—How filled.—Vacancies occurring in any state, judicial district, county, precinct, township or any public elective office, thirty days prior to any general election, shall be filled thereat. Vacancies occurring in the office of probate judge or justice of the peace, shall be filled by appointment by the county commissioners."

The answer to this contention is also found in the case of Budge v. Gifford supra. Therein the court made specific reference to sec. 324, Rev.Codes, which section is identical to sec. 59–909, I.C., and said:

> "Many authorities have been cited where it has been held that the terms 'general election' and 'regular election' mean the next general or regular election for the filling of the office referred to, and the provisions of section 324, Rev.Codes, with reference to the filling of vacancies occurring 30 days prior to the general election, in so far at least as the issues of this particular case are concerned, may be held to *apply only to elections at the end of the term when the particular office would ordinarily be filled.* (Emphasis supplied)

It therefore follows that insofar as the provisions of sec. 59–909, I.C. apply to the instant case, the term "general election" as used therein refers to the election held November 4, 1958, being when this particular office would ordinarily be filled (sec. 34–205, I.C.). No special election to fill the office was held. Plaintiff legally filed his declaration of candidacy, pursuant to sec. 34–702, I.C., for the office of district judge as created by chapter 15 and having received a majority of all votes cast for said office in the nominating election held on August 12, 1958, as provided by sec. 34–707, I.C., he was properly declared elected. The effect of said statute sec. 34–707, I.C. is to make the primary election the general election for district judges receiving the requisite number of votes. Plaintiff was so elected to take office at the beginning of the succeeding regular term which commenced on the 5th day of January, 1959 (sec. 67–302, I.C.). The term of a district judge is four years (Idaho constitution Art. 5, Sec. 11; sec. 34–205, I.C.). Plaintiff was not elected to hold office four years and two months or any other period in excess of the regular four year term.

Under the provisions of said Sec. 6, Art. 4 of the Idaho constitution and the statutes cited, a vacancy in the office of district judge, no matter how caused or created, can only be filled by appointment by the governor. This court in the case of Budge v. Gifford supra stated:

> "The absolute grant of that right to the Governor is prohibitive on the Legislature to attempt to limit or restrict the full exercise thereof."

To construe sec. 59–909, I.C. and other code sections cited by plaintiff in the manner contended for by plaintiff would be adopting a construction which necessarily would be repugnant to the constitution.

The responsibility of creating an office and district such as is here involved rests with the legislature and it is not the province of the courts to pass upon the propriety or wisdom of its action in that regard.

We have given this case the careful consideration its importance demands and having reached the conclusion that the vacancy in the office involved was not filled by plaintiff in the manner provided by law, his claim for compensation is denied. The alternative writ of mandate heretofore issued is quashed and plaintiff's petition for a peremptory writ is denied. Costs to defendant.

PORTER, C. J., and SMITH and McQUADE, JJ., and YOUNG, District Judge, concur.

TAYLOR, J., not participating.