612 P.2d 542

Darwin MICKELSEN, Plaintiff-Appellant,

v.

CITY OF REXBURG, Idaho, a Municipal Corporation, John Porter, Mayor, and Nile Boyle, Morgan Garner, Barton Jensen, Norman Holman, Warren Porter, and Darlene Blackburn, as Council of the City of Rexburg, Idaho, Defendants-Respondents,

v.

Allen BYINGTON, Stephanie Byington, Garrett E. Case, Gale J. Case, Earl J. Gardner, Joseph F. Rytting, Edna R. Rytting, Kenneth Wagoner, and Laura Wagoner, Intervenors-Respondents.

No. 12979.

Supreme Court of Idaho.

June 6, 1980.

Breck H. Barton of Rigby, Thatcher, Andrus, Barton & Walters, P.A., Rexburg, for plaintiff-appellant.

J. D. Hancock, of Smith, Hancock & Moss, Rexburg, for defendants-respondents City of Rexburg and Rexburg City Council.

J. Kent Jolley, Rexburg, for respondents-intervenors.

McFADDEN, Justice.

Plaintiff-appellant Darwin Mickelsen applied to Defendant-respondent City of Rexburg, Idaho, for a license to sell draught, bottled or canned beer for on-premises consumption in Rexburg. After his application was denied, Mickelsen filed his petition for a writ of mandate with the district court to compel the council to issue the license. Trial was held, and Mickelsen's petition was denied. Mickelsen appeals from this denial.

On September 9, 1977, Mickelsen filed with the city of Rexburg an application for a building permit to construct a "Beer Building—To be used for the sale of draught, bottled and canned beer for consumption on premises." The building was to be constructed on Mickelsen's property at 250 W. Main in Rexburg, which was zoned "commercial." On October 27, 1977 the building permit was issued by the city "For the Construction Of: Commercial Bldg 250 W. Main." Also on this day, Mickelsen applied to the city for a license to sell beer for consumption on the premises. No action was taken on the application until the November 1, 1977 regular meeting.

Mickelsen's property is at the outer edge of a commercial zone, and is adjoined on the west by residential property which was so zoned. The record indicates that considerable public sentiment existed in opposition to the issuance of the beer license. The opponents to the issuance of the license included the adjacent residential property-owners who are among the intervenor-respondents. At the regular meetings of the city council on November 1, and 17, 1977, the city council heard the statements of Mickelsen's attorney, of an attorney for the intervenors, and of opponents to the license. It then denied his application for a beer license.

Despite the denial of his application for a beer license, Mickelsen commenced construction on the premises, and incurred some $35,000 in financial liability in the process.

The city council's decision turned on the interaction of two of Rexburg's ordinances. In 1940 the council passed ordinance no. 341, the "Beer Licensing Ordinance." Three sections of no. 341 are pertinent to this case: § 5 states that no license for the retail sale of beer shall issue "if the place where the applicant proposes to carry on such business is not a suitable or orderly place." Section 13 reads in pertinent part as follows.

"No license shall be issued to any person to sell nor distribute draught beer, or bottled or canned beer to be consumed on the premises where sold or delivered, *in any residential district, or section of said city chiefly occupied by residences.* And any such licenses may be issued to retailers to sell or deliver such beer, in retail trade, *only in that part of said city, hereinafter described and designated the business section . . . .*"

Section 14 defines "business section," street by street, with particularity. Mickelsen's property was not listed as a part of the "business section." Section 14 categorizes the remainder of the city as "residential."

Twenty-eight years later, in 1968, the council enacted ordinance no. 478, entitled "The Zoning Chapter," which classified the entire city into seven zones. The property in question was there zoned "Commercial." The permitted uses in the commercial zone included "restaurants, cafes, bars, and clubs . . . ." Section 3 of no. 478 reads:

"3. SCOPE. It is not intended by this chapter to repeal, abrogate, annul or in any way impair or interfere with existing provisions of other laws or ordinances, except those specifically repealed by this chapter . . . . Where this chapter imposes a greater restriction upon land . . . than is required by such . . ordinance . . . the provisions of this chapter shall control."

After a two day trial which included an inspection by the court of the premises and surrounding area, the district court sitting

without a jury found that the 1968 zoning ordinance did not repeal section 13 of the 1940 beer licensing ordinance; that Mickelsen's property is in an area of the city chiefly occupied by residences; that the council therefore had no ministerial duty to issue the beer license to Mickelsen, and did not abuse its discretion in refusing to do so. Mickelsen thereafter filed timely notice of appeal.

The 1940 beer licensing ordinance has as its primary function to set standards and requirements for the issuance of licenses to engage in the retail sale of beer. In performing this task, the ordinance divides the city into those areas in which the retail sale of beer is permitted, and those in which it is not. Because it is not primarily a zoning ordinance, it is understandable that these quasi-zoning provisions are less than a model of clarity. The ordinance makes three provisions, in fact, for the location of taverns. In section 5, it states that beer may not be sold in any location which is not "suitable." In section 13, the ordinance also includes as possible standards that beer may not be sold in any section of the city "chiefly occupied by residences," and finally that it may not be sold outside the "business section." Needless to say, these three standards may at times yield conflicting results.

The 1968 zoning ordinance stands in contrast to these amorphous provisions. By means of a detailed map of the city, it classifies all the land in the city into a variety of zones, and states very plainly that the zone into which Mickelsen's property falls, "commercial," is suitable for "bars, and clubs . . . ."

The two Rexburg ordinances, then, yield conflicting results on the question whether Mickelsen may operate a beer tavern on his property which was zoned "commercial." In holding that the 1968 ordinance controls, we rely on three well-settled propositions of law.

■ The first relies on the nature of the act in which Mickelsen seeks to engage. Citizens may not have an absolute right to sell beer. But Idaho statutes and case law establish a distinction between the sale of beer and the sale of liquor. Unlike the rather broad "local option" afforded local government in the case of liquor, the right to sell beer may not be denied by local government arbitrarily, and in fact local government may only place "reasonable" restrictions on the sale of beer. *Barth v. De Coursey*, 69 Idaho 469, 207 P.2d 1165 (1949); I.C. § 23–1009.

■ Second, we have made it clear on numerous occasions that when two governmental promulgations are in irreconcilable conflict, the one enacted later in time governs. *E.g.*, *State Dept. of Parks v. Idaho Dept. of Water Admin.*, 96 Idaho 440, 530 P.2d 924 (1974); *Lloyd Corp. v. Bannock County*, 53 Idaho 478, 25 P.2d 217 (1933).

Thus to the extent of a conflict between the earlier and later statute with respect to the location of beer taverns, the more recent expression of legislative intent prevails.

■ Finally, it is also established that a specific statute will control over a general or vague statute when the two are in conflict. *Christensen v. West*, 92 Idaho 87, 437 P.2d 359 (1968). The 1940 ordinance, as noted above, contains three potentially conflicting standards for deciding the propriety of a beer tavern's location. The 1968 ordinance by contrast is simple, clear and straightforward: "bars and clubs" are a suitable use for any property zoned "commercial."

■ We hold therefore that the 1968 ordinance, because of its more reasonable and comprehensive assessment of the proper location for beer taverns, because of its enactment later in time, and because of its more specific and precise nature, impliedly repeals the 1940 ordinance with respect to the determination of the proper location for beer taverns in the city of Rexburg. *Paullus v. Liedkie*, 92 Idaho 323, 442 P.2d 733 (1968); *Jordan v. Pearce*, 91 Idaho 687, 429 P.2d 419 (1967); *Golconda Lead Mines v. Neill*, 82 Idaho 96, 350 P.2d 221 (1960).

We reach this decision notwithstanding the 1968 ordinance's saving clause, cited

above. This clause is itself extremely vague since it sets forth conflicting standards for determining repeal. Its first sentence states that repeal is determined only by consulting the list of specific prior ordinances mentioned in the 1968 ordinance's enacting clause. In other words, this sentence purports to restrict the ordinance's reach to express repeal. The second sentence, however, suggests that we look only to which of two conflicting provisions places the greater restriction on the use of land: at least when the 1968 ordinance is more restrictive than other ordinances, it controls. The ordinance contains no standard for resolving a conflict between these two sentences.

Should we choose to apply the second sentence we are also offered no guidance in defining "greater restriction upon land . . . ." The Rexburg City Council would assumedly argue that this restriction is to be measured against the specific limited proposals of an individual citizen: thus because Mickelsen could operate a tavern under the 1968 ordinance, but could not under the 1940 ordinance, the 1940 ordinance imposes a "greater restriction." On the other hand it is arguable that the concept of restriction should be given a more comprehensive reading. Under such a reading, a comparison of the 1940 ordinance (which says no more than that beer taverns are not allowed on Mickelsen's property) and the 1968 ordinance (which, while allowing beer taverns, *disallows* an extensive variety of other, for example industrial, activities on the property) shows that the later ordinance is by far the more comprehensively restrictive.

In view of this considerable imprecision in the scope of application of the 1968 ordinance's saving clause, we are unwilling to rely upon it to overturn the result which very clearly appears when applying the common law rules of construction discussed above.

Because we perceive an irreconcilable conflict between the earlier and the later ordinances on the matter of location of taverns for the sale of beer, we therefore hold that the district court erred in ruling that the city council was free to apply the 1940 ordinance. The 1968 ordinance also zoned Mickelsen's property commercial, and declared that beer taverns are a permitted use in such a zone. Thus we also hold that the Rexburg city council erred in refusing to grant Mickelsen's license because of his proposed location.

The record also indicates that Mickelsen possessed all the other qualifications, and none of the disqualifications, set by statute and ordinance as prerequisites for the issuance of a license to operate a beer tavern. The city council therefore had no discretion to deny him a license; its duty to issue the license was merely ministerial, and the district court therefore erred in not issuing its writ of mandate to compel the city council to perform this duty. I.C. § 7–302; I.C. § 23–1009; *Barth v. De Coursey*, 69 Idaho 469, 207 P.2d 1165 (1949).

Reversed and remanded for further proceedings in accord with this opinion. Costs to appellant.

SHEPARD and BISTLINE, JJ., concur.

DONALDSON, Chief Justice, dissenting.

I dissent. By using commonly accepted rules of statutory construction, the two ordinances involved in this law suit can be construed so as to be in harmony. I also concur in part IV of Justice Bakes' dissent.

BAKES, Justice, dissenting:

The majority purports to be "rely[ing] on three well settled propositions of law" to reverse this case. However, the majority ignores the first and foremost maxim of statutory construction. "[I]t is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of the statutory provision which harmonizes and reconciles it with other statutory provisions." *Sampson v. Layton*, 86 Idaho 453, 457, 387 P.2d 883, 885 (1963). Stated another way: "As a fundamental rule of statutory construction, 'Statutes *in pari materia* [pertaining to the same subject], although in apparent con-

flict, are so far as reasonably possible construed to be in harmony with each other.' " *Christensen v. West,* 92 Idaho 87, 88, 437 P.2d 359, 360 (1968), *quoting* 2 Sutherland, Statutory Construction § 5201, 531–32 (3d ed. 1943).[1]

The most casual reading of the majority opinion reveals that the majority has made no effort to "harmonize and reconcile" the two ordinances. In fact, it appears the majority has gone to great lengths to find conflicts and ambiguities where none exist. The end result is that the social policies of a majority of this Court prevail over the social policies of the city of Rexburg, Idaho. One may disagree with the restrictive attitude of the city of Rexburg regarding the retail sale and dispensation of beer. While it undoubtedly poses an inconvenience to beer drinkers, it does not justify the majority's tortured statutory analysis.

## I

The majority commences its statutory construction analysis by derogating the 1940 beer licensing ordinance as "amorphous" and "less than a model of clarity." [2] The majority opinion then argues that the 1940 ordinance contains three separate standards which "[n]eedless to say . . . may at times yield conflicting results." The majority forgets that it is reversing a trial court which found no conflict. Therefore, the majority does *"need to say "* exactly what conflict it perceives within the 1940 ordinance. The majority fails to articulate the purported conflict simply because there is none.

---

1. The *Christensen* case cites an impressive array of authority to support the rule of law quoted above. Included are the following Idaho cases: *Sampson v. Layton,* 86 Idaho 453, 387 P.2d 883 (1963); *Tway v. Williams,* 81 Idaho 1, 336 P.2d 115 (1959); *McCall v. Martin,* 74 Idaho 277, 262 P.2d 787 (1953); *McNaughton v. Newport,* 67 Idaho 91, 170 P.2d 601 (1946); *Stearns v. Graves,* 61 Idaho 232, 99 P.2d 955 (1940); *Mountain View Rural Tel. Co. v. Interstate Tel. Co.,* 55 Idaho 514, 46 P.2d 723 (1935); *Cook v. Massey,* 38 Idaho 264, 220 P.2d 1088 (1923); *Brown v. Bryan,* 6 Idaho 1, 51 P. 995 (1898).

2. The majority's entire statement reads: "Because it is not primarily a zoning ordinance, it

The 1940 beer licensing ordinance lists a number of requirements for issuance of a license. The prerequisites for granting a license are not unlike the personal eligibility requirements in employment security cases. In such cases, the applicant must satisfy each eligibility condition in order to qualify for unemployment compensation. I.C. § 72–1366. *See, e. g., Bean v. Employment Security Agency,* 81 Idaho 551, 347 P.2d 339 (1959). The 1940 beer licensing ordinance is similarly arranged. If an applicant fails to satisfy any of the prerequisites set out in the ordinance, he is not entitled to the license. The following reasons, among others, constitute grounds for denial of a license application:

1. If the proposed place of business "is not a suitable or orderly place." Section 5.

2. If the proposed place of business is not on the ground floor of the building in question. Section 8.

3. If the proposed place of business is also a grocery store. Section 12.

4. If the proposed place of business is located "in any residential district, or section of said city chiefly occupied by residences." Section 13.

5. If the proposed place of business is located within 200 feet of certain public buildings and areas, for example, schools, the county courthouse, parks, and the like. Section 13.

6. If the proposed place of business is located outside of the "business" district

is understandable that these quasi-zoning provisions are less than a model of clarity." That statement is apparently premised on the novel notion that zoning ordinances are models of clarity. Anyone who has ever been exposed to zoning ordinances will immediately see the fallacy of that syllogism. One need only read a few of our zoning cases to confirm that. *See, e. g., Cooper v. Board of County Commissioners of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980), rehearing granted May 2, 1980; *Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 567 P.2d 1257 (1977); *Ready-to-Pour, Inc. v. McCoy,* 95 Idaho 510, 511 P.2d 792 (1973); *Harrell v. City of Lewiston,* 95 Idaho 243, 506 P.2d 470 (1973).

which is defined street by street with particularity. Section 14.

There are other personal qualifications in addition to those set out above. Contrary to what the majority says, these sections do not yield conflicting results. As in unemployment compensation cases, if the beer license applicant does not meet any one of the eligibility conditions, he is not entitled to the license even though he may meet all of the other standards. The fact that the applicant met some requirements and not others does not create a conflict.

When the trial court concluded that the proposed place of business was located in a section of the city "chiefly occupied by residences" and was outside the "business" sector, it found that the applicant failed to meet two of the eligibility requirements of the ordinance and therefore was not entitled to a license. It was for this reason that the district court denied the mandamus petition. Properly analyzed, there is no internal conflict in the 1940 ordinance. Under the rule of law which has been announced repeatedly by this Court it is our duty to "harmonize and reconcile" the ordinance. While the ordinance may be overly restrictive for the tastes of many, apparently including the majority, it is not subject to criticism for "yield[ing] conflicting results."

## II

In concluding that the 1968 zoning ordinance impliedly repeals the 1940 beer licensing ordinance, the majority next states that "the 1968 ordinance, because of its more reasonable and comprehensive assessment of the proper location for beer taverns, because of its enactment later in time, and because of its more specific and precise nature, impliedly repeals the 1940 ordinance." A close analysis of the 1968 zoning ordinance will show that just the opposite is true.

The zoning ordinance is more general than the 1940 beer licensing ordinance. The 1968 ordinance provides that its purpose is to promote "the public health, safety and welfare"; to "protect the public"; and "to provide for adequate light, pure air, the prevention of blight conditions, safety from fire and other danger, undue concentration of population and ample parking facilities." Zoning Ordinance of the City of Rexburg, § 2. See also I.C. § 67–6502. Zoning ordinances address several areas of local concern: land use planning, traffic flow, growth patterns, urban design, controlled development, preservation of green space, and the like. Accordingly, the 1968 ordinance is written in general terms. It makes no reference to the qualifications necessary for obtaining a retail beer license. The beer licensing ordinance, on the other hand, is specific and has, as the majority observes, a single purpose: "to set standards and requirements for the issuance of licenses to engage in the retail sale of beer."

Admittedly, the subject property is in an area now zoned "commercial." The C1 zone, Class I (the commercial classification apparently applicable to the property in question) is hardly the model of draftsmanship the majority suggests.[3] Contrary to

---

3. "C1 ZONE, CLASS 1. PERMITTED USES: R1, R2 and R3 above, plus apartment houses, restaurants, cafes, bars and clubs, auto sales and service, drug and food stores, professional offices, mortuaries, boarding houses.

"Minimum Floor Area Required: Same as R3 above.

"Minimum Lot Area Required: Same as R3 above.

"PERMITTED USES: Motels.

"Exceptions to, and Limitations on Permitted Uses: One attached residence allowed.

"PERMITTED USES: Mobile homes.

"Exceptions to, and Limitations on Permitted Uses: Same as residence in R3.

"PERMITTED USES: Small Industry.

"Exceptions to, and Limitations on Permitted Uses: Small industry if not obnoxious or offensive by reason of odor, vapor, dust, gas or noise.

"PERMITTED USES: Mobile Homes Court.

"Exceptions to, and Limitations on Permitted Uses: Structural additions permitted.

"Minimum Floor Area Required: None.

"Mobile Homes Courts are subject to Trailer Court Ordinance.

"PERMITTED USES: Trailer Court.

"Exceptions to, and Limitations on Permitted Uses: Structural additions not permitted.

"Minimum Floor Area Required: None.

the majority's statement, "beer taverns" are not permitted uses in the zone. In fact, there is no reference in the 1968 zoning ordinance to either "beer" or "taverns" or "beer taverns," although "bars and clubs" are permitted uses in the commercial zone.[4] However, there is not the slightest suggestion in the ordinance that merely because an individual owns property in the "commercial" zone he *must* be granted a beer license.[5] To say that the 1968 zoning ordinance which does not even mention the words "beer" or "taverns" impliedly repeals an ordinance which specifically establishes prerequisites for the issuance of beer retailing licenses, flies in the face of the rule that a specific ordinance will control over a general one. *E. g., Christensen v. West*, 92 Idaho 87, 437 P.2d 359 (1968).

### III

This brings me to the savings clause of the 1968 zoning ordinance, a provision to which the majority pays unimpressive lip service. The entire provision reads as follows:

"PERMITTED USES: Motels.

"Exceptions to, and Limitations on Permitted Uses, One attached residence permitted.

"Minimum Floor Area Required: Same as R3 above.

"OTHER PROVISIONS FOR COMMERCIAL ZONES. No livestock or poultry or related industries shall be permitted in these zones. A maximum of 40 per cent of the total floor area provided may be in industry or storage use incidental to the primary use.

"Curb-cuts shall be allowed for parking lot use only.

"Joint use of off-street parking facilities shall be permissible where an attested copy of a contract between the parties concerned setting forth the agreement to such joint use is filed with the application for a building permit. Parking space requirements shall be reduced 10 per cent for each two (2) applications attesting to said contract, however, in no case shall the reduction be more than 20 per cent.

"REQUIREMENTS AFFECTING ALL ZONES: See as hereinafter set forth."

4. The majority opinion is written as though the 1968 zoning ordinance permits "beer taverns" in the C1 zone. What the ordinance allows are "bars and clubs." The majority has merely assumed that under the 1968 ordinance a "beer tavern" is either a "bar" or a "club." However, a glance at the dictionary will disclose that there are numerous definitions of a "bar"

"3. SCOPE. It is not intended by this chapter to repeal, abrogate, annul or in any way impair or interfere with existing provisions of other laws or ordinances, except those specifically repealed by this chapter or with private restrictions placed upon property by covenant, deed or other private agreement, or with restrictive covenants running with the land to which the city is a party. Where this chapter imposes a greater restriction upon land, buildings or structures than is imposed or required by such provisions of law, ordinance, contract or deed, the provisions of this chapter shall control."

The first sentence of the provision clearly reflects an intention to leave the operation of other ordinances undisturbed. We should not ignore that clearly expressed legislative intent. The 1968 zoning ordinance was not *"in any way [to] impair or interfere"* with existing ordinances. In order to justify such interference, the majority attempts to create a conflict between the second sentence of the provision and the

or a "club" which do not involve the retail sale of beer. At best the phrase in the 1968 zoning ordinance is ambiguous in that regard. Such an ambiguity, if it were important to resolve in this case, a proposition in which I do not concur, would best be done at the trial level where ambiguities in facts are to be determined—not on appeal, and then by assumption, as the majority has done. In any event, this ambiguity certainly refutes the majority's description of the 1968 zoning ordinance as "simple, clear and straightforward."

5. The 1968 zoning ordinance is not the determinative factor in beer licensing decisions. For example, according to the beer licensing ordinance, the owner of property within 200 feet of the county courthouse could not obtain a beer license for that parcel of land. *See also* I.C. § 23–1011B. The fact that such parcel may be zoned commercial is irrelevant. Certainly, this does not mean that the "200 feet" requirement has been impliedly repealed, even though the majority does hold that the provisions of the 1940 ordinance regulating the "location" of beer taverns are "impliedly repealed." Similarly, the owner of a parcel of commercially zoned property which lies in an area "chiefly occupied by residences" is not entitled to a license. The mere fact that these ordinances partially overlap does not mean that they conflict.

first. A close analysis of this attempt will disclose that it fails badly.

The second sentence provides that where "this chapter imposes a greater restriction upon land . . . than is required by such . . . ordinance . . . the provisions of this chapter shall control." The zoning ordinance *permits* the operation of a bar on the subject property; the beer licensing ordinance does not. The beer licensing ordinance therefore imposes "the greater restriction upon land" and should control. The majority seems to recognize that this obvious interpretation is of arguable validity. As a result, the Court's analysis should stop right there, since that interpretation gives effect to both sentences of the savings provision, thus "harmonizing" and "reconciling" them as it is our duty to do. *Sampson v. Layton*, 86 Idaho 453, 387 P.2d 883 (1963). Nonetheless, the majority, in its zeal to strike down this ordinance, concludes that the zoning ordinance is "more comprehensively restrictive." The majority has thus succeeded in reading the first sentence of the savings clause out of existence. It is the majority's interpretation which creates the conflict and leads to the implied repeal of the 1940 ordinance.[6] "[R]epeal by implication is not favored . . . ." *Golconda Lead Mines v. Neill*, 82 Idaho 96, 101, 350 P.2d 221, 223 (1960).

### IV

The majority's opinion also appears to have disregarded the nature of a writ of mandate. Mandamus will not issue unless the petitioner has a clear legal right to have the act done and only if such act does not involve the exercise of discretion, but is merely ministerial. *Wyckoff v. Board of County Commissioners of Ada County*, 101 Idaho 12, 607 P.2d 1066 (1980); *Saviers v.*

*Richey*, 96 Idaho 413, 529 P.2d 1285 (1974); *Fitzpatrick v. Welch*, 96 Idaho 280, 527 P.2d 313 (1974). *See* I.C. § 7–302. Under the beer licensing ordinance, the city council is the body responsible for determining whether the license applicant has met all the prerequisites. It is the initial trier of fact. The council found that the proposed beer tavern site was located in a "section of the city chiefly occupied by residences" and was outside the "business section." The district court affirmed both these findings after a two day trial and a personal inspection of the site. There is ample evidence in the record to support these findings, and the majority does not assert otherwise. Indeed, although the majority asserts that the applicant met "all the other qualifications" of the beer licensing ordinance, it does not even address the trial court's finding that the proposed site was in an area "chiefly occupied by residences."

Mandamus will not lie to review the findings of either an administrative or judicial factfinder. Just this year in the *Wyckoff* case we held that mandamus would not lie to review the Ada County Commission's refusal to grant a license, *i. e.*, zoning certificate, where there was evidence to support their action. The *Wyckoff* decision is controlling on the mandamus issue. The district court's decision denying the writ of mandamus should be affirmed.

### V

The majority's dislike for the restrictive social policies of the city of Rexburg is apparent. Granted, the Rexburg beer licensing ordinance appears to be considerably more restrictive than ordinances of other cities in the state of Idaho. It is even possible that the ordinance places unreason-

---

**6.** If Mickelsen's proposed retail beer establishment were located within rather than without the "business" district as defined in the 1940 beer licensing ordinance, but was located in a residential zone where "bars and clubs" were not permitted, then the provisions of the 1968 zoning ordinance would "impose [the] greater restriction." In that case, appellant would qualify under the 1940 beer ordinance, but would not qualify under the zoning ordinance.

The zoning ordinance would control because it would "impose [the] greater restriction upon [the] land." However, under the facts of this case the opposite is true. The proposed retail beer tavern is not within the "business" district as defined in the 1940 ordinance and is within a "section of said city chiefly occupied by residences," both of which under the 1940 ordinance disqualify the applicant from conducting a retail beer establishment at that location.

able restrictions on the retail sale of beer for on-premises consumption, *see Barth v. De Coursey*, 69 Idaho 469, 207 P.2d 1165 (1949), but that issue was not raised before the trial court or on appeal, nor has the majority concluded that the ordinance requirements are unreasonable. Nonetheless, that sentiment permeates the majority's opinion.[7]

The majority opinion will have two unfortunate and undesirable long term effects. First, it distorts well established principles of statutory construction in Idaho. Second, it may disturb the parameters of reasonableness applicable to beer licensing ordinances. If the ordinance is unreasonably restrictive, let us so hold directly in a case which properly raises that issue. We should not distort our rules of statutory construction in order to get at what apparently the majority sees as an excessively restrictive ordinance.

Accordingly, I dissent.

---

**7.** Thus, the majority concludes, "We hold therefore that the 1968 ordinance . . . [is a] more reasonable and comprehensive assessment of the proper location for beer taverns." However, it should be obvious that this Court has no expertise, and no record from which to make a judgment as to reasonableness of locations for beer taverns in Rexburg, Idaho, or any other city.