# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 30648

| | | |
|---|---|---|
| STEVEN LEE HYDE, | ) | 2007 Opinion No. 3 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: February 8, 2007 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| GREG FISHER, Warden, IMSI, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Daniel C. Hurlbutt, District Judge.

Order granting the state's motion to dismiss, <u>reversed</u> and case <u>temporarily remanded</u>.

Steven L. Hyde, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Paul R. Panther, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Steven Lee Hyde, an Idaho inmate, appeals from the order of the district court denying his petition for writ of *habeas corpus*, arguing his statutory and constitutional rights to practice his Native American religion have been violated. For the reasons stated below, we reverse the district court's order dismissing Hyde's statutory claims and temporarily remand the case for further proceedings.

## I.

## SUMMARY OF FACTS AND PROCEEDINGS

Hyde is an inmate committed to the custody of the Idaho Department of Correction (IDOC) under the laws of the state of Idaho. Since 1993, Hyde has been housed at the Idaho Maximum Security Institution (IMSI), under the supervision of respondent, Warden Greg Fisher (the state). Hyde's religious practices include Odinism and Native American religion. Traditional Native American religious practices were formerly allowed at IMSI. The sweat

lodge ceremony was allowed at IMSI from 1992 until 1998, when the sweat lodge was dismantled after former Warden Paskett concluded that the sweat lodge grounds had been desecrated by a group of Native American practitioners who were found roasting wieners over the sweat lodge fire. Smudging ceremonies were permitted from the opening of IMSI in 1989 until 2002 when the IDOC interpreted its "No-Tobacco" policy as prohibiting burning of any kind. IMSI prison officials also prohibit Hyde from using a ceremonial pipe to smoke a tobacco-free form of kinnikinnik, from wearing a choker, from possessing a feather and certain herbs and grasses having spiritual significance to him, and from operating a club designed to facilitate the practice of the Native American religion at IMSI.

On October 30, 2001, Hyde filed a petition for writ of *habeas corpus* in which he avers that the state has violated his rights to practice his religion under the First and Fourteenth amendments to the United States Constitution; Article 1, §§ 3 and 4 and Article 4, § 2 of the Idaho State Constitution; the Religious Exercises in Land Use and by Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*; and the Free Exercise of Religion Protected Act (FERPA), Idaho Code § 73-401, *et. seq.* Specifically, Hyde alleges constitutional and statutory violations of his right to exercise the Native American religion by way of the sweat lodge, ceremonial pipe, smudging, and possession of kinnikinnik, sage, feathers, a choker, and a bandana, among others. Hyde proposed numerous methods of accommodating his religious rights.

The state moved the district court to dismiss Hyde's petition for writ of *habeas corpus*. The state argued that Hyde had not stated a claim upon which relief could be granted, that he had not satisfied the security bond requirement of I.C. § 6-610, that *habeas corpus* is not a vehicle for enforcement of the FERPA and the RLUIPA, and that the Establishment clauses of the United States and Idaho constitutions prohibit the state from providing the requested relief. The district court granted in part the state's motion to dismiss on the basis that Hyde had failed to post a security bond when filing his claims for relief under the RLUIPA and the FERPA.

As to Hyde's constitutional claims, the court held a bench trial on the merits. At the close of Hyde's case-in-chief, the state moved for dismissal. The district court noted that it had heard sufficient evidence regarding the government's compelling security interest and determined the state established without question that security and safety at IMSI represented a compelling interest. The court denied the state's motion to dismiss, however, and allowed

additional testimony to determine whether the state had considered less restrictive alternatives than a complete ban on Hyde's religious practices.

After hearing all the evidence, the district court issued written findings of fact and conclusions of law. The district court denied Hyde's constitutional free exercise claim, ruling that the IMSI regulations prohibiting the items necessary for Hyde to exercise his Native American religion have a valid, rational connection to a legitimate penological security interest. The district court denied Hyde's petition as to his equal protection claim on the basis that, given the valid penological interest in security and the good order of the prison population, it would constitute an unreasonable and burdensome cost for the state to fully accommodate Hyde's religious practices. The court also held that lack of parity in resources allocated among religions, alone, is not grounds for an equal protection claim. Hyde appeals.

## II.

## ANALYSIS

We find meritorious Hyde's contention that the district court erred in granting the state's motion to dismiss his claims under the RLUIPA[1] and the FERPA.[2] These federal and state

---

[1]  42 U.S.C. § 2000cc-1 of the RLUIPA provides, as a general rule:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if that burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

[2]  Idaho Code Section 73-402 of the FERPA states, in full:

(1) Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral.

(2) Except as provided in subsection (3) of this section, government shall not substantially burden a person's exercise of the religion even if the burden results from a rule of general applicability.

(3) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:
    (a) Essential to further a compelling governmental interest;
    (b) The least restrictive means of furthering that compelling governmental interest.

statutes were enacted in response to the Supreme Court's departure from the "compelling state interest" standard used for testing the constitutional validity of laws of general applicability affecting religious practices. *See Employment Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 882-89 (1990). In *Smith,* the Court abandoned the earlier standard and held that the First Amendment is not offended by laws of general applicability that only incidentally burden religious conduct. *Id.* at 878-79. Subsequently, the Idaho legislature adopted the FERPA, declaring that "[f]ree exercise of religion is a fundamental right that applies in this state, even if law, rules or other government actions are facially neutral." I.C. § 73-402(1). In its statement of legislative intent, the Idaho legislature recognized that "[t]his state has independent authority to protect the free exercise of religion by principles that are separate from, complementary to and more expansive than the first amendment of the United States Constitution." 2000 Session Law, Chapter 133, § 1(4) (S.B. No. 1394). The legislature indicated its finding that the "compelling interest test, as set forth in the federal cases of Wisconsin v. Yoder, (1972) and Sherbert v. Verner, 374 U.S. 398, (1963) is a workable test for striking sensible balances between religious liberty and competing government interests." *Id.* at § 1(6).

## A.     Idaho Code Section 6-610 Security Bond Does Not Apply to Indigent Prisoners

Hyde's statutory claims for violation of the FERPA and the RLUIPA were dismissed by the district court specifically because he had not filed a bond, which the court deemed required by I.C. § 6-610. Section 6-610(2) states that as a condition precedent to filing a civil action against any "law enforcement officer," including corrections officials, a plaintiff must:

> . . . prepare and file with, and at the time of filing the complaint or petition in any such action, a written undertaking with at least two (2) sufficient sureties in an amount to be fixed by the court. The purpose of this requirement is to ensure diligent prosecution of a civil action brought against a law enforcement officer, and in the event judgment is entered against the plaintiff or petitioner, for the

---

> (4) A person whose religious exercise is burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. A party who prevails in any action to enforce this chapter against a government shall recover attorney's fees and costs.

> (5) In this section, the term "substantially burden" is intended solely to ensure that this chapter is not triggered by trivial, technical or de minimis infractions.

4

payment to the defendant or respondent of all costs and expenses that may be awarded against the plaintiff or petitioner, including an award of reasonable attorney's fees as determined by the court.

In *Pigg v. Brockman,* 79 Idaho 233, 242, 314 P.2d 609, 614 (1957), our Supreme Court explained that I.C. § 6-610 "is clearly an exercise of police power, intended to secure to the people of the state maximum protection and effective law enforcement by freeing police officers so far as possible from the fear of petty, harassing, vexatious, and vindictive litigation." The *Pigg* decision affirmed the dismissal of an action for the plaintiff's failure to comply with the bond requirements of section 6-610.

We conclude, however, that in view of more recent enactments governing the payment of filing fees, costs, security and attorney fee awards in litigation by indigents, I.C. § 6-610 is no longer effective with respect to litigation initiated by indigent prisoners. In 1977, the Idaho legislature adopted I.C. § 31-3220, which authorized Idaho courts to waive filing fees, costs, and security for indigents. In 1996, the legislature added section 31-3220A, which addresses payment of fees by indigent *prisoners* and amended section 31-3220 to make it applicable only to indigent *non-prisoners*. Section 31-3220A authorizes trial courts to waive all or a portion of court fees for indigent prisoner litigants, provides a mechanism for installment payment of the fees from inmate accounts, and provides for the award of costs and attorney fees against prisoner litigants upon certain determinations by the trial court. Within the same session law enacting section 31-3220A, the legislature also provided for direct levies against a prisoner's inmate account or personal property to satisfy judgments against the prisoner, now codified as I.C. § 11-108. 1996 Idaho Sess. Laws, ch. 420, § 1 at 1399.

In our view, section 31-3220A has essentially superseded I.C. § 6-610 with respect to indigent prisoners. Recently the United States District Court for the District of Idaho addressed this issue in an unpublished opinion, *Pugsley v. Cole*, Docket No. CV04-068-S-LMB (June 27, 2005), and while that unpublished decision does not stand as authority, we credit the federal district court for its incisive analysis, which we adopt as our own:

> [I]n 1996, the legislature divided I.C. § 31-3220 into two separate sections, § 31-3220, applicable to indigent nonprisoner litigants, and § 31-3220A, applicable to indigent prisoner litigants. The provision that "filing fees, costs, and security" may be waived remained in the nonprisoner section, but the prisoner section included only that "court fees" may be waived. The exclusion of "costs and security" does not appear to comport with the amended statute's "Statement of Purpose," which was "to place prison and jail inmates on an equal footing with

5

other civil law litigants concerning claims against the state and counties" and to accomplish the following five "disincentives to the filing of frivolous claims": (1) "a provision for full or partial payment of court filing fees by prisoners; (2) a requirement for prisoners to file an affidavit of indigency concerning an inability to pay costs of litigation; (3) authority for the court to dismiss a claim that the court finds to be frivolous, or fails to state a claim upon which relief can be granted; (4) the potential for institutional disciplinary action for malicious claims and/or false testimony; and (5) provisions making prisoner's assets more susceptible to execution." S.B. 1394, 53rd Leg., 2nd Sess. (Idaho 1996). The "Statement of Purpose" also specifically notes that the legislation was intended to "preserv[e] the right of inmates to file meritorious claims." *Id.* The "disincentives" are very specific and do not address lack of ability to obtain a bond as a disincentive; rather, the "disincentives" include what may be considered an alternative to a bond, the allowance of the state or county to collect judgments by "direct levy" upon prisoner trust accounts and property without obtaining writs of execution when a judgment for defense costs is assessed against a prisoner. *See* I.C. § 11-108.

The Idaho Supreme Court has not addressed the applicability of I.C. § 31-3220A to I.C. § 6-610 in any opinion. In light of the legislature's later enactment of statutes protecting the right of indigents to bring meritorious claims against the state and counties, this Court does not believe that the reasoning of *Pigg v. Brockman* would have continuing applicability in the context of indigent litigants. It appears that the Idaho legislature, in enacting I.C. § 31-3220A, simply did not contemplate situations in which a prisoner might be required to post security as a prerequisite to pursuing a cause of action. If I.C. § 31-3220A is read to require prisoners to post such security, it is clearly contrary to the law's stated purposes of preserving inmates' rights to file meritorious claims and placing inmates on equal footing with nonprisoner indigents in their ability to sue the state and counties.

As a general proposition, when statutes conflict, a later or more specific statute controls over an earlier or more general statute. *Johnson v. Boundary School Dist. #101*, 138 Idaho 331, 335, 63 P.3d 457, 461 (2003); *Paterson v. State*, 128 Idaho 494, 502, 915 P.2d 724, 732 (1996); *Mickelsen v. City of Rexburg*, 101 Idaho 305, 307, 612 P.2d 542, 544 (1980). It appears that in enacting I.C. § 31-3220A and I.C. § 11-108, the legislature envisioned a comprehensive statutory scheme providing disincentives for frivolous prisoner litigation and providing for the waiver of and/or collection of fees and costs in the unique circumstances faced by indigent prisoner litigants, and this legislative scheme overrides the bond requirements of I.C. § 6-610. Consequently, an indigent prisoner plaintiff's failure to post a bond does not affect his or her ability to bring a FERPA claim.

Moreover, enforcement of section 6-610 to prevent an indigent plaintiff from pursuing a claim for violation of the FERPA, would itself be a violation of the FERPA. The very purpose

of the FERPA is to outlaw any state action, including the application of "laws" or "rules," I.C. § 73-402(1), that burden the exercise of religious practices unless the state can demonstrate that enforcement of the law or rule is essential to further a compelling governmental interest and is the least restrictive means of furthering that interest. The FERPA also gives an individual whose religious exercise has been burdened in violation of the FERPA the right to assert that violation as a claim in a judicial proceeding and obtain relief against the government. I.C. § 73-402(4). Enforcement of the section 6-610 requirement for the filing of a bond before a complaint alleging a FERPA violation could even be filed would amount to an absolute bar to FERPA enforcement actions by indigent plaintiffs. In that circumstance, section 6-610 would stand in direct contravention of the FERPA by preventing the vindication of the "fundamental right" that the FERPA was enacted to protect.

The principle that when statutes are in conflict and cannot be reconciled, a more recent or more specific statute controls over an earlier or more general statute was applied in *Paterson*, 128 Idaho 494, 915 P.2d 724, where an award of punitive damages had been made against the state of Idaho for violation of the Idaho Human Rights Act (IHRA), I.C. § 67-5901, *et seq.* The state appealed, arguing that it could not be liable for punitive damages because such damages were barred under the Tort Claims Act, I.C. § 6-918. The court noted that "[a] basic tenet of statutory construction is that when two statutes conflict, the more specific statute controls over the more general," and held that in the absence of language in the IHRA limiting the state's liability, "the more specific imposition of liability under IHRA controls over the more general immunity grant contained in I.C. § 6-918." *Id.* at 502, 915 P.2d at 732. Similarly, in *Johnson*, 138 Idaho at 335, 63 P.3d at 461, the Supreme Court held that a lawsuit contesting a school district levy election was governed by I.C. § 34-2001A--a statute governing bond election and mill levy contests--rather than I.C. § 33-408--which applies to contests of "an election concerning any proposition" submitted to school district voters--because the former statute was the more recent and the more specifically applicable. *See also Mickelsen*, 101 Idaho at 307, 612 P.2d at 544; *H-K Contractors, Inc. v. City of Firth*, 101 Idaho 224, 611 P.2d 1009 (1979). We therefore hold that the FERPA, as the more recent enactment and the one specifically addressing vindication of the fundamental right of religious exercise, governs this action and precludes application of I.C. § 6-610 to prevent an indigent inmate from pursuing a FERPA action. The district court erred in dismissing Hyde's FERPA claim for failure to post a bond.

**B.      Idaho's Security Bond Requirement Preempted by Federal Law**

Even if the Idaho legislature had not added I.C. § 31-3220A, waiving the I.C. § 6-610 bond requirement for indigent prisoner litigants, Idaho's bond requirement is preempted by the RLUIPA for all litigants whether indigent or not. *See* 42 U.S.C. § 2000cc-3(e) (regarding the statute's "preemptive force"). To impose a bond requirement under state law as a precondition to the filing of an RLUIPA action, would impermissibly burden the rights protected by that federal statute. In *Felder v. Casey,* 487 U.S. 131, 144 (1988), the United States Supreme Court held that notice requirements of a state tort claims act could not be applied to bar an action for violation of federal civil rights law. The Court reasoned that "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." States "may no more condition the federal right to recover for violations of civil rights than bar that right altogether . . . ." Similarly, in our case, the "burdening of a federal right . . . is not [a] permissible consequence of an otherwise neutral, uniformly applicable state rule." *Id.* Rather, protection of law enforcement officers under I.C. § 6-610 "extends only to governmental defendants and thus conditions the right to bring suit against the very persons and entities Congress intended to subject to liability." *See id.* at 144-45. We are constrained therefore to conclude that the RLUIPA preempts any bond requirement of I.C. § 6-610 even if such a requirement otherwise applied here. The district court erred in dismissing Hyde's RLUIPA claim for failure to post bond.

**C.      The Statutory Claims May Be Considered in This *Habeas Corpus* Action**

The state argues that the dismissal of Hyde's RLUIPA and FERPA claims was proper under an alternative basis--that *habeas corpus* may be used only to present claims of *constitutional* violations in conditions of confinement. *See* I.C. § 19-4203(2). On the particular procedural history of this case, we reject this rationale. The state's position that the statutory claims may not properly be asserted in a *habeas corpus* proceeding was not the basis for the district court's decision dismissing the RLUIPA and the FERPA claims. Rather, they were dismissed for Hyde's failure to pay a bond that he apparently could not afford. If the asserted procedural impropriety of presenting the statutory claims within a *habeas corpus* action had been the basis for the dismissal order, Hyde could have reasserted those claims in a separate civil action, and they could have been consolidated for trial with the constitutional *habeas corpus*

claims. As matters now stand, the parties have already gone through a full trial. Because the constitutional and statutory claims challenge precisely the same acts of correctional authorities and require consideration of precisely the same evidence at trial, it would be extraordinarily inefficient at this juncture to refuse consideration of the statutory claims in this proceeding.

Moreover, because the state and federal statutes impose upon the state a higher standard than does the constitution to justify the restrictions upon Hyde's religious expression,[3] assuming even if we were to affirm the district court's denial of Hyde's claims of constitutional violations, that decision would not resolve the statutory claims. For these reasons, the interest of judicial efficiency and timely judicial attention to Hyde's allegations that the state has violated the FERPA and the RLUIPA call for temporary remand to the district court to render findings and conclusions on the statutory causes of action. I.A.R. 13.3. Because the statutes require application of stricter standards to the state's conduct, the court's previous findings that constitutional standards were not violated do not sufficiently address the statutory claims. On remand, the district court should examine individually each of Hyde's asserted religious practices that have been prevented or restricted and determine whether the state has met its burden, as to each, to show that the restriction is essential to further "a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." *See* 42 U.S.C. § 2000cc-1 and I.C. § 73-402(3).

---

[3]    A four factor test is used to determine the validity of a regulation that burdens an inmate's constitutional rights. The inquiry is:

(1)  whether the regulation has a logical connection to the legitimate government interests invoked to justify it;
(2)  whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates;
(3)  the impact that accommodation of the asserted right will have on guards, other inmates, and prison resources; and
(4)  the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Turner v. Safley*, 482 U.S. 78, 89-90 (1987). The RLUIPA and the FERPA, on the other hand, require a showing that the regulation advances "a compelling governmental interest" and is "the least restrictive means" of furthering that compelling interest. 42 U.S.C. § 2000cc-1 and I.C. § 73-402(3).

### III.

### CONCLUSION

The district court erred in granting the state's motion to dismiss Hyde's statutory free exercise of religion claims. Accordingly, we reverse that order and temporarily remand to the district court for issuance of findings and conclusions on the RLUIPA and FERPA claims. Additional taking of evidence is not required in this instance based on the extensive evidentiary record already developed before the district court. Thereafter, the district court's decision on the statutory claims shall forthwith be made part of the appellate record and the clerk of the court shall set a schedule for the filing of supplemental briefs by the parties.

Chief Judge PERRY and Judge LANSING **CONCUR**.